**STATE of Minnesota, Respondent,**

v.

**John CERMAK, Appellant.**

No. C1–82–478.

Supreme Court of Minnesota.

Feb. 17, 1984.

Robert D. Goodell, Minneapolis, for appellant.

Hubert Humphrey, III, Atty. Gen., St. Paul, R. Kathleen Morris, Scott County Atty., Shakopee, for respondent.

AMDAHL, Chief Justice.

This is a sentencing appeal pursuant to Minn.Stat. § 244.11 (1982). Defendant pleaded guilty to six counts of criminal sexual conduct in the first degree, one count for each of six children. The presumptive sentence for criminal sexual conduct in the first degree (a severity level VIII offense) by a person with defendant's criminal history score (zero) is an executed prison term of 43 (41–45) months. Pursuant to Minnesota Sentencing Guidelines and Commentary, II.F.2 (1983), the trial court was free to sentence defendant consecutively without having to give any reasons. The trial court not only sentenced defendant to six consecutive sentences but departed durationally in each instance, increasing the sentence for each offense to 80 months. This resulted in an aggregate sentence of 480 months or 40 years in prison, which is the maximum authorized by Minn.Stat. § 609.15, subd. 2 (1982). We affirm.

Defendant was originally charged with a total of 13 offenses, and this number was increased by amendments to 15. Ten of the 15 charges were based on an incident that occurred in June or July of 1981 in a bedroom at the residence of defendant's brother, James, in Belle Plaine. The state contended that defendant (as well as James) anally penetrated each of five children, three girls, ages 9, 8, and 7, and two boys, ages 5 and 3. Defendant was charged with one count of criminal sexual conduct in the first degree, Minn.Stat. § 609.342(a) (1982), and one count of criminal sexual conduct in the second degree, Minn.Stat. § 609.343(a) (1982), for each of the five acts of penetration. Subsection (a) of these two statutes is the subsection dealing with penetration (section 609.342) or contact (section 609.343) with a person under age 13 by a person more than 36 months older. Defendant was born in 1952 and therefore was 29 years old at the time of the incident.

Three of the charges stem from an incident in a motel in New Prague on or about April 3, 1981, and involved an 11-year-old

boy. The state claimed that defendant's brother, James, committed sexual acts on the boy and took pictures of him, then called defendant, who came to the motel, anally penetrated the boy, and also took pictures of the boy. Defendant was charged with criminal sexual conduct in the first and second degree, Minn.Stat. §§ 609.-342(a) and 609.343(a) (1982), for the anal penetration and was also charged with promoting a minor to engage in obscene works.

The other two charges stemmed from an incident that occurred at James Cermak's residence in Belle Plaine in June of 1980, and involved a 12-year-old boy. The state contended that defendant committed fellatio on the boy and threatened to break every bone in the boy's body if the boy told anyone about the sex act. Defendant was charged with criminal sexual conduct in the first and second degree, Minn.Stat. §§ 609.-342(a) and 609.343(a) (1982), for the act of fellatio.

Following a change of venue to Rochester, the case came on for a jury trial in November of 1981. After the trial started defendant agreed to plead guilty to six of the counts of criminal sexual conduct in the first degree (the only exception being the count based on the alleged penetration of the 3-year-old boy) in exchange for the dismissal of all the other charges.

In entering his pleas defendant was not asked about allegations, contained in the complaint concerning the incident that occurred in June or July 1981, that the incident was not isolated but was one of a continuous series of such incidents occurring over a considerable period of time. The court asked defendant a series of questions designed to make a record as to why defendant was pleading guilty, and defendant said in response to one question, "I did do the charge, I did do what I am accused of." The prosecutor questioned defendant in order to establish a factual basis for each of the six charges to which defendant was pleading guilty. Defendant admitted committing fellatio on the 12-year-old boy in Belle Plaine in June of 1980, admitted

anally penetrating the 11-year-old boy in the motel in New Prague in April of 1981, and admitted anally penetrating the 9- 8-and·7-year-old girls and the 5-year-old boy in Belle Plaine in June or July of 1981. When the prosecutor asked him if he also vaginally penetrated the 9-year-old girl, defendant said, "I don't recall the vaginal."

At the time of sentencing the trial court questioned defendant about his apparent denial of the misconduct (except that involving the 11-year-old boy) in his statement to the presentence investigator. Defendant claimed that he could not remember the other incidents. The trial court then proceeded to impose the six consecutive 80-month terms, making an aggregate term of 480 months or 40 years in prison. The trial court stated that it felt compelled to depart because of (a) the "particular vulnerability of the six juvenile victims due to age and mental capacity;" (b) the "obvious fact that the situation has gone on for a considerable period of time, the defendant's protestations to the contrary;" and (c) the "particular cruelty, mental and physical, exhibited to the children of tender years." In a subsequently filed departure report the court stated:

> As set forth in full in the sentencing transcript, the substantial and compelling circumstances requiring the Court to deviate from the sentencing guidelines in this matter were as follows:
>
> 1. All of the victims were totally vulnerable due to their age, and most were additionally vulnerable due to their * * relationship to the defendant and these factors were known to the defendant.
> 2. There is no question but what the victims were treated cruelly by the defendant, not only physically but most particularly psychologically, in that the experiences were so traumatic that there is a serious question as to whether the victims will ever develop a normal outlook regarding their sexuality.
> 3. That all the victims were injured, not only physically but psychologically, as witness the fact that all have been and will continue to be under the care of

psychiatrists and psychologists on a regular basis for a period of time not as yet determined. In this regard, it's well to note that the psychologists and psychiatrists hold out little hope for recovery to a normal outlook on sexuality in the case of three or four of the victims.

a. Here the Court noted the multiplicity of the victims and the fact that the totality of the number of victims has never been established, although the pictures received in evidence in the cases indicate that numerous other unidentified children were also sexually abused by the defendant and his brother. Some of these have been identified since the defendant's plea, while others remain unidentified to this date.

b. The Court also noted that the abuse by the defendant of the victims extended over a long period of time and was multiple with regard to each of the victims rather than merely isolated cases of abuse.

c. The Court also considered the fact that the defendant used his position of trust * * * in order to accomplish the abusive acts he plead[ed] guilty to.

Overall, the Court had in mind the admonition specifically set forth in the sentencing guidelines that, "Equity in sentencing requires that convicted felons similar with respect to relevant sentencing criteria ought to receive similar sanctions." Here the defendant and his brother James Cermak both were involved in essentially the same criminal acts with essentially the same juvenile victims on essentially the same occasions. Under these circumstances, the Court felt that the guidelines themselves compelled the Court taking the position it took with regard to these sentences, so that both would receive "similar sanctions."

Defendant claims that his sentence should be reduced to 270 months, the maximum sentence permitted without departing. We affirm the sentence.

The aggravating and mitigating factors listed in Minnesota Sentencing Guidelines and Commentary, II.D. (1983), and the factors that we have used in analyzing durational departures or departures with respect to consecutive service generally are factors that focus on the defendant's conduct, specifically, whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question.

One of the points that the parties dispute in their briefs on appeal in arguing whether or not defendant's conduct was such as to justify the increased sentence by the trial court is the matter of whether the court could consider certain underlying conduct of defendant. The case law on this point is now well developed.

■ One principle that emerges from these cases is that the sentencing court may not consider evidence that points to the defendant's guilt of some other offense but does not support the conclusion that the defendant committed the instant offense, for which he is being sentenced, in a particularly serious or cruel way. Cases acknowledging or relying on this principle include *State v. Running*, 330 N.W.2d 119 (Minn.1983); *State v. Peterson*, 329 N.W.2d 58 (Minn.1983); and *State v. Brusven*, 327 N.W.2d 591 (Minn.1982).

■ A related principle that emerges from the cases is that generally it is proper for the sentencing court to consider the course of conduct underlying the charge for which the defendant is being sentenced. A case illustrating the proper reliance on this principle is *State v. Rott*, 313 N.W.2d 574 (Minn.1981), in which the defendant committed a series of thefts by check. That scheme began when she opened a checking account with a deposit of $100 and subsequently obtained a large amount of high numbered checks. From June to the end of December 1980, when she was arrested, she wrote many checks at various Twin Cities stores obtaining property valued at between $16,000 and $20,000. Pursuant to a plea bargain, she pleaded guilty in Ramsey County to five counts of theft

by check of over $150 on condition that she would not be prosecuted for other checks passed in Ramsey County. We upheld the durational departure on the ground that factors (a), (b), and (c) of Minnesota Sentencing Guidelines and Commentary, II.D. 2.b.(4) (1982), applied. We held that the sentencing court was justified in looking at the conduct underlying the charges because the defendant admitted that the offenses of which she was convicted were part of an ongoing scheme or course of conduct, admitted that she committed all of the offenses, even the underlying ones, and admitted that they were all related. Other illustrative cases include *State v. Brigger*, 316 N.W.2d 512 (Minn.1982), and *State v. Garcia*, 302 N.W.2d 643 (Minn.1981).

There is, however, an important exception to the principle that the sentencing court may look at the underlying course of conduct in order to reach the conclusion that the defendant's conduct was sufficiently serious to justify the departure. This exception was first recognized in *State v. Womack*, 319 N.W.2d 17 (Minn. 1982). The defendant in *Womack* was charged with being a felon in possession of a pistol and with assault in the second degree (assault with a dangerous weapon). The defendant pleaded guilty to the possession charge on the understanding that the assault charge would be dismissed, but in sentencing the defendant the court based a durational departure on its belief that the defendant had committed the assault. This court held that this was improper and reduced the defendant's sentence to the presumptive sentence length, stating:

> Notwithstanding [Rott and related cases], we believe that it was error in this case for the trial court to rely on the overall course of conduct as justification for aggravating defendant's sentence for the possession charge. Defendant admitted that he violated the law in possessing the gun but at all times he has claimed that he used it against the complainant only in self-defense, first in striking her when she attacked him with the knife, later to fire in the air and frighten her in an attempt to stop her from attacking

him as he attempted to drive away. Defendant had a right to have a jury determine his guilt or innocence of that charge. He gave up that right only on condition that the charge would be dismissed in exchange for his guilty plea to the possession charge. It is one thing for the sentencing court to look at the conduct underlying the offense to which the defendant pled guilty if the defendant admits that the underlying conduct occurred, but it is quite another thing when the defendant denies that such conduct occurred. In this case the defendant at all times has claimed that he acted in self-defense. Stated differently, although defendant obtained a dismissal of the assault charge in exchange for his guilty plea and although he has never admitted his guilt of the assault charge, he received a term of 30 months, which is the duration of the term which would have been presumptively appropriate if he had been convicted of the assault by a jury.

> The state's response is that as a matter of law defendant did not act in self-defense. However, upon analysis it becomes apparent that the state is really arguing that *as a matter of fact* defendant did not act in self-defense. Given the way in which the case was presented to the trial court, the trial court was not entitled to act as factfinder and determine whether defendant was telling the truth when he claimed that the complainant attacked him with a knife. That being so, we believe that the departure, based on the sentencing court's factfinding, was improper.

319 N.W.2d at 19–20.

In the instant case the defendant did not admit at the guilty plea hearing that his sexual misconduct in June or July of 1981 was part of any underlying course of sexual misconduct involving those victims and he expressly denied that he penetrated the children on the occasion in question in any way other than anally. Indeed, by the time of the sentencing hearing defendant was even impliedly denying that he

had anally penetrated them, claiming that he had no memory of it. Under the circumstances, the sentencing court was not free to consider, in determining whether defendant's conduct was particularly serious, the prosecutor's contention that the incident involving the children in June or July of 1981 was part of a continuing course of sexual abuse of those children.

Having addressed the disputed issue of what information the sentencing court properly could consider, we proceed to examine the main issue of whether defendant committed any or all of the offenses in a particularly serious way.

■ We start with the four offenses committed against the children at his brother's place in Belle Plaine in June or July of 1981. Those children were 9, 8, 7, and 5 years old at the time. The state contends that they were all particularly vulnerable due to age. In *State v. Brusven*, 327 N.W.2d 591, 593 (Minn.1982), this court said:

> Ordinarily, it is inappropriate for the sentencing court to use as a basis for departure the same facts which are relied upon in determining the presumptive sentence. Thus, if the youth of the victim is a factor in determining the degree of the defendant's guilt, then that fact plays a role in determining the offense severity level and ultimately in determining the presumptive sentence; in such a situation, it is generally unfair to consider the youth of the victim a second time in determining whether or not to depart.

However, as we stated in *State v. Luna*, 320 N.W.2d 87, 89 (Minn.1982), "[e]ach case must, nonetheless, be considered on its own" with the sentencing court making a "qualitative assessment" of all the facts to determine if the defendant's conduct was sufficiently different in degree to justify the durational departure. Examples of cases applying these principles include: *State v. Brusven*, 327 N.W.2d 591 (Minn. 1982) (held, improper in case of intrafamilial sexual abuse in the first degree for sentencing court to rely on the fact that

the victim was only 10 years old, a fact that was considered by the legislature in distinguishing intrafamilial sexual abuse in the first degree from intrafamilial sexual abuse in the third degree); *State v. Johnson*, 327 N.W.2d 580, 582 (Minn.1982) (held, court sentencing defendant for violating section 609.342(a) could not consider fact that victim was only 12 as a departure factor because the offense contained an age element); *State v. Partlow*, 321 N.W.2d 886 (Minn.1982) (held, court sentencing defendant for violating section 609.342(a) could consider fact that victim was only 2 years and 10 months old as a departure factor); *State v. Luna*, 320 N.W.2d 87 (Minn.1982) (held, although it is true that the legislature has considered the age of the victim in distinguishing sex offenses by degree, the court could consider the fact that the victim was only 13 in conjunction with other facts in concluding that the case was sufficiently different in degree to justify the upward durational departure).

■ As we indicated, the four children defendant admitted sexually abusing in June or July of 1981 were approximately 9, 8, 7, and 5 years old. We do not necessarily have to decide whether the age of any of those four victims would itself justify an upward durational departure. The *Luna* case stands for the proposition that even if the age of the victim alone would not justify an upward departure, it can be considered in connection with other facts in determining if the conduct underlying the offense was sufficiently different in degree from the "typical" conduct connected with such an offense to justify the upward departure.

■ There are a number of other significant facts. One is the fact that the defendant and his brother were in a position of trust or position of authority over the four children. We have held in prior cases— *Luna* being only one—that the fact that the defendant violated section 609.342 in more than one way is a factor that can be considered in determining the particular seriousness of the underlying conduct.

Another relevant fact is that defendant and his brother committed the offenses together with each child having to witness the sexual abuse of the others. *Cf. State v. Profit*, 323 N.W.2d 34 (Minn.1982).

One factor relied upon by the state in its brief is that the type of penetration involved was anal penetration. The state relies on language in *State v. Profit*, 323 N.W.2d 34 (Minn.1982), which it contends suggested that anal penetration can itself be a basis for departure. In *Profit* the fact that there was anal penetration in addition to another kind of penetration—that is, the fact that there were two different kinds of penetration—justified the departure. In *State v. Brusven*, 327 N.W.2d 591 (Minn. 1982), we concluded that for departure purposes anal penetration is not significantly different from any other type of sexual penetration.

The state also argues that the defendant by his conduct inflicted severe psychological injury on the victims. This may well be so, but the record on appeal does not adequately support the contention. Further, it is arguable that there is always psychological injury inflicted on the victim in any case falling within section 609.342(a).

The state also points to the fact that some of the victims were victimized in their own home. The cases the state relies on, however, were cases of forcible rape in which strangers intruded into the victim's zone of privacy. *See, for example, State v. Morales*, 324 N.W.2d 374 (Minn.1982). Cases of incest usually take place at home.

One could argue that incest cases in general merit more severe punishment than other cases of criminal sexual conduct. That, however, is an issue for the legislature and for the Sentencing Guidelines Commission. Whether or not incest cases in general merit more severe punishment than other cases of criminal sexual conduct, we believe, after making a qualitative assessment of all the relevant facts, that the departures in the cases based on the penetration of the four children in June or July of 1981 must be affirmed.

■ The departure in the sentence for the conviction based on the act of fellatio committed on the 12-year-old boy in June of 1980 is a relatively easy one to justify because defendant apparently threatened to break every bone in the boy's body if he told anyone. That fact makes the defendant's conduct particularly cruel.

■ The departure in sentencing defendant for the conviction based on the anal penetration of the 11-year-old boy in the motel in New Prague is arguably the most difficult to justify. It is questionable whether the fact that the boy was only 11 years old would alone justify the departure because the statute itself has an age element. On the other hand, it is arguable that the fact that pictures apparently were taken of the boy is an aggravating factor. We need not decide the point because even if the departure for the offense was unjustified, it would not follow that defendant's total sentence should be reduced. This is because if the trial court had doubled the sentences for the other five convictions—which we hold it could have done—all the court would have had to do was impose a sentence of 30 months for the remaining conviction in order to reach the statutory limit of 480 months for all the cases.

■ Defendant's final argument is the equity argument. This subject was discussed thoroughly in *State v. Vazquez*, 330 N.W.2d 110 (Minn.1983). Defendant's argument of inequity is based primarily on the fact that the trial court that sentenced his brother for similar misconduct did not depart from the presumptive sentence. This argument has only superficial appeal, given the fact that departures apparently were not necessary in his brother's case in order to reach the statutory maximum of 480 months.

Affirmed.