**STATE of Minnesota, Respondent,**

v.

**Gary D. COLEY, Appellant.**

No. C2–90–2222.

Court of Appeals of Minnesota.

April 16, 1991.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, James C. Backstrom, Dakota County Atty., Charles A. Diemer, Asst. County Atty., Hastings, for respondent.

Thomas M. Kelly, Kelly & Jacobson, Minneapolis, for appellant.

Considered and decided by
PETERSON, P.J., and PARKER and
FOLEY, JJ.

## OPINION

PARKER, Judge.

The state charged Gary Coley with committing the following offenses: Count I, criminal sexual conduct in the first degree (armed with a dangerous weapon), Minn. Stat. § 609.342, subd. 1(d) (1990); Count II, criminal sexual conduct in the first degree (force or coercion), Minn.Stat. § 609.342, subd. 1(e)(i) (1990); Count III, kidnapping (to commit great bodily harm or to terrorize the victim but releasing victim in safe place), Minn.Stat. § 609.25, subds. 1(3) and 2(1) (1990); and Count IV, assault in the second degree, Minn.Stat. § 609.222 (1990). To each count the state cited Minn.Stat. § 609.11 (1990) (presumptive mandatory minimum term of imprisonment).

The jury acquitted Coley on Count I (first degree criminal sexual conduct while armed with a dangerous weapon), but convicted him on the remaining counts.

The trial court sentenced Coley on the charge of first degree criminal sexual conduct to an executed 67–month commitment, which represented a 24–month upward departure from the presumptive 43–month sentence. The court did not impose sentence on the assault conviction and stayed imposition of sentencing on the kidnapping conviction. Upon defendant's demand, the court resentenced Coley on the kidnapping charge so that the sentences would be executed concurrently.

On appeal Coley argues (1) the prosecutor's improper remarks during closing argument require a reversal; and (2) the upward durational departure is unjustified. We affirm.

## FACTS

In violation of a restraining order, Gary Coley surreptitiously entered his ex-wife's house. He tied her up and forced her to perform fellatio and intercourse. He then forced her into the garage. When she tried to escape, he recaptured and retied her, threatened to kill her, and held her hostage for three hours.

In opening statement, the defense attorney told the jury the evidence would show that Coley came only to discuss visitation rights; that he tied her up to make her listen; that he did not have a gun; that the victim consented to the acts of fellatio and intercourse; and that he made no threats and walked away. The prosecutor moved for a mistrial. Before trial, the defense attorney had admitted it was speculative whether his client would testify. Therefore, the prosecutor believed this argument was made in bad faith because no ground existed for these assertions. The prosecutor later withdrew his motion for mistrial because he did not want to put the victim through another trial. He requested a curative instruction, which was denied. Coley did not testify.

During closing argument the prosecutor highlighted the defense attorney's failure to prove what he said the evidence would show:

Do you remember the testimony that came from this witness stand by [NC]? What was actually said here? [NC] never said that she consented to any of these acts. She was repeatedly questioned by the defense and not once did she say there was consent to those acts. Is there any other testimony that came from this witness stand that says she consented? None.

* * * * * *

[NC] called it what it was, a rape. In plain English * * * that's what we are talking about. This wasn't consensual. There is no way that that was consensual. Remember, testimony comes from the witness stand. Testimony doesn't come from my lips. Testimony doesn't come from [defense attorney's] lips. [Defense attorney] attempted to cross-examine [NC] to somehow make it sound like this was her idea. Remember [defense attorney's] opening statements? The evidence will show * * * that [NC] convinced Mr. Coley to have sex. That's what [defense attorney] said the evidence will show. That's not evidence. The judge will instruct you that's not evidence.

Here's where the evidence comes from: Did [defense attorney] have any testimony from this witness stand?

At that point the defense attorney moved for a mistrial and court recessed. In chambers the trial court said it would be improper to argue to the jury that there was no evidence because the defense put on no witnesses. The prosecutor could, however, argue what the evidence shows. The trial court denied the motion for mistrial because he believed the prosecutor was merely highlighting the evidence.

When the prosecutor resumed his closing argument, he said:

As I was saying, the testimony comes from the witness stand. Did [NC] ever say that she consented? Not once. After repeated cross-examination [NC] never said, "Geez, you know, it might have been my idea." There wasn't a shred of evidence of that. There wasn't one bit of evidence to ever infer that she consented to these acts.

The defense attorney again moved for a mistrial, which the court denied.

The court gave two reasons for the upward departure from the presumptive sentence. First, Coley treated the victim with particular cruelty during the three hours he held her hostage. She feared for her life and agonized over the thought that her children would discover her dead body if he carried out his threats. Second, the crime occurred in her house.

## ISSUES

1. Did the prosecutor's remarks constitute reversible error?

2. Did aggravating factors justify the upward departure from the presumptive sentence?

## DISCUSSION

### I

■ The reviewing court's duty is "to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations." *United States v. Hasting*, 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983). A finding of error is not sufficient to warrant a new trial; the appellant must also show the error was prejudicial. *Hasting*, 461 U.S. at 509, 103 S.Ct. at 1980; *United States v. McCrady*, 774 F.2d 868, 874 (8th Cir.1985).

■ Coley argues that the prosecutor's repeated references to defense's failure to contradict testimony indirectly alluded to his failure to testify, thus violating the fifth amendment to the United States Constitution; section 7, article 1, of the Minnesota Constitution; and Minn.Stat. § 611.11 (1990).

On this issue the United States Supreme Court has said:

> The question a reviewing court must ask is this: absent the prosecutor's allusion to the failure of the defense to proffer evidence to rebut the testimony of the victims, is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?

*Hasting*, 461 U.S. at 510–11, 103 S.Ct. at 1981 (citing *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969)). The court must take the prosecutor's closing argument as a whole and not use a single phrase as a basis for reversal. *State v. Holscher*, 417 N.W.2d 698, 702 (Minn.App.1988), *pet. for rev. denied* (Minn. Mar. 18, 1988).

■ The prosecutor had a right to point out that the record did not support defense counsel's representations in opening statement; yet, we think the prosecutor's remarks went beyond this right. *See Hasting*, 461 U.S. at 511, 103 S.Ct. at 1981. We conclude that his remarks constituted error, but we are satisfied the error was harmless beyond a reasonable doubt.

■ First, the evidence is strong. The victim's uncontradicted testimony constituted direct evidence of his crimes. Photographs of her physical injuries and torn clothing sustantiate Coley's particular cruelty toward her. Based on this evidence, the jury would have convicted Coley despite the prosecutor's comments. Second, the jury could not have been unduly prejudiced; they acquitted him on one count of first degree criminal sexual conduct. His remarks did not prevent the jury from distinguishing carefully between those charges proved and those not proved beyond a reasonable doubt.

### II

The trial court has discretion to depart from the presumptive sentence under the guidelines if the offense involves substantial and compelling circumstances. Minn. Sent.Guidelines II.D (1990); *see also State v. Cook*, 351 N.W.2d 385, 386 (Minn.App. 1984) (citing *State v. Garcia*, 302 N.W.2d 643 (Minn.1981)). Substantial and compelling circumstances are those demonstrating that "the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime." *State v. Cermak*, 344 N.W.2d 833, 837 (Minn.1984). Aggravating factors, such as those found in the Guidelines' non-exclusive list, must be present to justify an upward departure. *See* Minn.Sent.Guidelines II.D.2.b.

### A. *Zone of Privacy*

■ We think it important to address the question of safety of divorced persons in their homes. The crime occurred in N.C.'s home. Invasion of the "zone of privacy" is an aggravating factor, because being victim of a crime occurring in one's home imposes an additional psychological shock. The victim's home is no longer the "island of security" upon which the victim has previously relied, thereby making the offense particularly cruel. *State v. Hines*, 343 N.W.2d 869, 873 (Minn.App.1984).

Coley argues the "zone of privacy" factor applies only to strangers, citing *Cermak*, 344 N.W.2d at 840. Since it was

their marital home for 20 years, Coley contends, the "zone of privacy" factor is inapplicable because N.C. knew her attacker and the home had been his marital home for 20 years. We disagree. The victim is entitled to the same security as are persons not divorced; to say otherwise might raise a real question of whether she is receiving equal protection of our laws.

### B. *Violation of Restraining Order*

 The trial court tried to protect N.C. from her ex-spouse by issuing a restraining order. Although Coley knew it was in effect, he violated it and committed the crimes. The trial court did not rely on this factor for the upward departure. Nevertheless, a reviewing court may find its own reasons for the upward departure if evidence in the record supports it. *See Williams v. State*, 361 N.W.2d 840, 844 (Minn.1985). Violation of a restraining order is a valid reason for an upward departure. *See State v. Lewis*, 385 N.W.2d 352, 357 (Minn.App.1986), *pet. for rev. denied* (Minn. May 29, 1986) (trial court could properly consider the fact that defendant was in violation of a restraining order when he set the fire for which he was convicted). Violation of the restraining order may be intertwined with the zone of privacy factor, but it forms a separate basis for an upward departure.

### C. *Element of the Offense*

 The trial court cannot make an element of the offense a reason for departure. *Hines*, 343 N.W.2d at 873 (citing *State v. Gardner*, 328 N.W.2d 159 (Minn. 1983)). "Holding hostage" is an element of the kidnapping charge on which sentence has been imposed. Consequently, the court inappropriately relied on this factor. The court, however, permissibly looked at the conduct underlying the charge of which Coley was convicted. *See State v. Schmit*, 329 N.W.2d 56, 57 (Minn.1983). He completed the rape in 15 minutes. Threatening to kill her, recapturing her and retying her when she tried to escape are not part of the rape; they are elements of the assault for which Coley was convicted but not sentenced and constitute particular cruelty.

*See, e.g., Hines*, 343 N.W.2d at 872–73 (threats made to the victim of a robbery were purely gratuitous, cruel and psychologically brutal and therefore aggravating factors supporting an upward departure). The trial court's upward departure based on Coley's demonstrating particular cruelty toward the victim was justified. *See* Minn. Sent.Guidelines II.D.2.b(2).

We note that no injustice is done. The legislature has, since sentencing, increased the presumptive sentence for first degree criminal sexual conduct to 86 months, with a permissible range of 81 to 96 months without departure. Coley's sentence, with departure, was far less than he would have received had he committed the crime after August 1, 1989.

Affirmed.