STATE OF MINNESOTA

IN SUPREME COURT

A22-0105

Court of Appeals                                                                              Chutich, J.

State of Minnesota,

         Respondent,

vs.                                                                                          Filed:  March 6, 2024
                                                                                    Office of Appellate Courts
Curtis Lablanche Vanengen,

         Appellant.

_____

Keith Ellison, Minnesota Attorney General, Saint Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Nicole Cornale, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

The district court did not abuse its discretion when it ordered an upward durational sentencing departure for third-degree criminal sexual conduct against a physically helpless person, in violation of Minnesota Statutes section 609.344, subdivision 1(d) (2020), when the offense occurred in the victim's zone of privacy.

Affirmed.

1

OPINION

CHUTICH, Justice.

The issue in this case is whether the zone-of-privacy aggravating factor is a legally permissible reason to depart from the presumptive sentence in a criminal sexual conduct case committed against a physically helpless person. Specifically at issue is whether criminal sexual conduct against a physically helpless person typically occurs in the victim's zone of privacy, which appellant Curtis Lablanche Vanengen asserts would make an upward departure impermissible. A jury found Vanengen guilty of third-degree criminal sexual conduct against a physically helpless person in violation of Minnesota Statutes section 609.344, subdivision 1(d) (2020). The jury also returned a special verdict finding that the offense, which occurred in the victim's bedroom, had taken place in the victim's zone of privacy. The district court ordered a 29-month upward durational departure when it sentenced Vanengen to 120 months in prison for this offense. The court of appeals affirmed the district court's aggravated sentence. Because the district court did not abuse its discretion when it ordered an upward durational departure based on the zone-of-privacy aggravating factor, we affirm the decision of the court of appeals.

**FACTS**

Respondent State of Minnesota charged Vanengen with third-degree criminal sexual conduct against a physically helpless person for his actions concerning A.F. *See* Minn. Stat. § 609.344, subd. 1(d) (2020).[1] The State also gave notice that it intended to

---

[1]    Minnesota Statutes section 609.344 was amended in 2021. *See* Act of June 30, 2021, ch. 11, art. 4, § 18, 2021 Minn. Laws 1st Spec. Sess. 1, 93–96. The provision making

2

seek an upward durational departure based on the offense being committed in the victim's zone of privacy.

The following facts were established at trial. A.F. rented a room in a Minneapolis house that included two other renters and the homeowner. Vanengen, who was friends with the owner, slept on a couch in the house for about 6 days out of the week but did not pay rent. A.F. testified that she and Vanengen "got along" until one evening she felt "violated" when he entered her bedroom while she slept and touched her—without invitation or permission. That evening, A.F. had fallen asleep in her bed, fully clothed, and with her bedroom door closed. Normally a heavy sleeper, A.F. woke up and discovered Vanengen in her bed, under the covers, and wearing only his boxer shorts. He was pulling her hair, "moving [her] around in weird positions," and trying to "put [his] dick between [her] butt cheeks." A.F. reacted strongly and "made a huge fuss" that woke the others in the house. She confronted Vanengen, yelling that he violated her and that he cannot touch women when they are sleeping. She also asked the homeowner to kick Vanengen out of the house, but the homeowner allowed him to stay. After this unwanted touching, A.F. and Vanengen "just weren't friends anymore," and she did not allow him back into her room except once to buy a curling iron from him.

About 6 weeks later, A.F. was sleeping in her bedroom when she awoke to find that her leggings had been pulled down and a penis was penetrating her vagina. A.F. realized

it a crime to engage in sexual penetration with a physically helpless person is now found in Minnesota Statutes section 609.344, subdivision 1(b) (2022). The substance of the statutory provision did not change.

that Vanengen was behind her, and she "pushed him out of [her]." She was in "complete and utter shock." One housemate had seen Vanengen go into A.F.'s room and later saw her leave the room "moving quick" with a "beet red" face. When the housemate asked A.F. what was wrong, A.F. told her, "Curtis just raped me." When the housemate confronted Vanengen about the rape allegation a few days later, he replied, "[S]he didn't say no. She was sleeping and I put my dick in her."

The jury found Vanengen guilty. On a special verdict, the jury also found, by proof beyond a reasonable doubt, that the offense "was committed in a location in which the victim had an expectation of privacy; that is, a zone of privacy."[2]

Vanengen was sentenced to 120 months in prison, a 29-month upward durational departure from the top of the presumptive sentencing guidelines range. Minn. Sent. Guidelines 4.B (sex offender sentencing grid). When imposing the upward departure, the district court explained: "I do find that the victim should have been able to expect safety and security in her own home, and that would be especially considering that the prior incident took place, which should have given Mr. Vanengen more than enough warning that his, you know, acts were uninvited and not wanted in any way."

Vanengen filed a direct appeal, arguing in part that the location of the offense in A.F.'s bedroom did not make it "significantly more serious" than the "typical" criminal sexual conduct offense against a physically helpless person who is asleep. *State v. Vanengen*, 983 N.W.2d 479, 488 (Minn. App. 2022). The court of appeals rejected

---

[2]     Neither party challenged the wording of the special verdict.

Vanengen's argument, noting that he relied on cases involving offenses that occurred in the bedrooms of others—a friend, coworker, and a boyfriend—not the victim's own bedroom. *Id.* The court acknowledged a meaningful distinction between the two classes of cases because a victim need not return to another person's bedroom but does not have a choice whether to return to their own bedroom, even when it is the scene of their assault. *Id.* The court of appeals reasoned that the sentencing enhancement was appropriate because A.F. had to return to the scene of her assault each day and, consequently, her " 'home [was] no longer the island of security upon which [she had] previously relied.' " *Id.* (quoting *State v. Coley*, 486 N.W.2d 552, 555 (Minn. App. 1991)).

We granted Vanengen's petition for further review and now affirm the decision of the court of appeals.

## ANALYSIS

We first decide whether it is legally permissible for a district court to upwardly depart based on the zone-of-privacy aggravating factor for a criminal sexual conduct offense against a physically helpless person. Then, we determine whether the zone-of-privacy aggravating factor was factually supported in this case.

We review a district court's departure from the presumptive sentencing range for an abuse of discretion. *State v. Solberg*, 882 N.W.2d 618, 623 (Minn. 2016). A district court abuses its discretion when its reasons for departure are not legally permissible or when the evidentiary record is insufficient to justify the departure. *Id.* A court may depart from the presumptive sentence only when there are "identifiable, substantial, and compelling circumstances to support a departure." Minn. Sent. Guidelines 2.D.1.

The Minnesota Sentencing Guidelines provide a non-exclusive list of aggravating factors that may be used as reasons to impose an upward sentencing departure. *See* Minn. Sent. Guidelines 2.D.3.b; *see also* Minn. Stat. § 244.10, subd. 5a (2022). Our precedent recognizes that an aggravating factor may explain "why the *facts* of the case provide the district court a substantial and compelling basis for imposition of a sentence outside the range on the grid." *State v. Rourke*, 773 N.W.2d 913, 921 (Minn. 2009). As set forth in the nonbinding comments to the guidelines, these departure "factors are intended to describe specific situations involving a small number of cases. The Commission rejects factors that are general in nature, and that could apply to large numbers of cases, such as intoxication at the time of the offense." Minn. Sent. Guidelines 2.D cmt. 2.D.301; *see also Rourke*, 773 N.W.2d at 920. Of course, aggravating factors may not be used to impose an upward sentencing departure for a crime of conviction when the aggravating factor is an element of that same offense. *State v. Obsborne*, 715 N.W.2d 436, 446 (Minn. 2006).

Listed among these reasons permitting an upward sentencing departure is that "[t]he offense was committed in a location in which the victim had an expectation of privacy." Minn. Sent. Guidelines 2.D.3.b(14); *see also* Minn. Stat. § 244.10, subd. 5a(14) (2022). Our case law explains one of the rationales behind this recognized reason for an upward departure: a victim must "contend psychologically not only with the fact that she was sexually assaulted in a brutal way but also with the fact that her home is no longer the island of security that she perhaps thought it was." *State v. Van Gorden*, 326 N.W.2d 633, 635 (Minn. 1982) (recognizing the zone-of-privacy aggravating factor in a criminal sexual conduct case); *see also State v. Parker*, 901 N.W.2d 917, 928–29 (Minn. 2017)

6

(recognizing application of the zone-of-privacy aggravating factor when "the crime caused either a continuing fear of harm in the home *or* involved a deliberate invasion," but noting that "nothing in the sentencing statute" required either rationale to be present before the zone-of-privacy factor could be used to enhance a sentence).

A.

Turning to the parties' arguments, the dispute here is a narrow one. The parties agree factually that A.F. was within her zone of privacy when Vanengen assaulted her in her bedroom. Likewise, consistent with applicable law, the parties agree that the zone-of-privacy aggravating factor alone may justify an upward departure. *Parker*, 901 N.W.2d at 929. Further, both parties agree that third-degree criminal sexual conduct against a physically helpless person can be committed against a sleeping victim, as well as victims who are physically helpless in other ways. *See* Minn. Stat. § 609.341, subd. 9 (2022) (defining "physically helpless" to mean "a person is (a) asleep or not conscious, (b) unable to withhold consent or to withdraw consent because of a physical condition, or (c) unable to communicate nonconsent and the condition is known or reasonably should have been known to the actor.").

Vanengen claims, however, that in cases of criminal sexual conduct against a physically helpless person, the fact that the offense occurred in the victim's zone of privacy is, by itself, not a legally sufficient justification for an upward sentencing departure. Citing *Tucker v. State*, he argues that criminal sexual conduct against a physically helpless person *typically* occurs in a bedroom within the victim's zone of privacy. 799 N.W.2d 583, 587 (Minn. 2011). As a result, Vanengen claims that this factor is not a legally permissible

7

reason to depart in this type of case. The State disagrees and cites cases where criminal sexual conduct against a physically helpless person took place in various locations outside of bedrooms—for example, in a bar, in a crawl space under a house, in a field, in a ditch, in a car, on a beach, in a bush, in a massage salon, in a child's playroom, in a nursing home, in a hospital, in an alley, and outside in the snow.

Vanengen essentially asks for a per se rule—that anytime criminal sexual conduct is committed against a physically helpless person, the district court cannot order an upward durational sentencing departure based on the zone-of-privacy aggravating factor because it is "typical" for this type of offense to occur in the victim's zone of privacy. We reject this per se rule because it is not sound.

Factually, we agree with the State that these types of attacks against a physically helpless person cannot be said to typically occur in the victim's zone of privacy. *See, e.g.*, *Browder v. State*, 899 N.W.2d 525, 527 (Minn. App. 2017) (involving criminal sexual conduct against a physically helpless person that occurred in a public place), *rev. denied* (Minn. Aug. 22, 2017); *State v. Mullen*, Nos. A20-0305, A20-0310, 2021 WL 772918 (Minn. App. Mar. 1, 2021) (involving criminal sexual conduct against a physically helpless person that occurred on a beach), *rev. denied* (Minn. May 26, 2021); *Banks v. State*, No. A17-0662, 2018 WL 817288, at *1 (Minn. App. Feb. 12, 2018) (involving criminal sexual conduct against a physically helpless person that occurred in a taxi), *rev. denied* (Minn. Apr. 25, 2018); *In re Welfare of R.R.R.*, No. C4-03-120, 2003 WL 22015400, at *1 (Minn. App. Aug. 26, 2003) (involving criminal sexual conduct against a physically helpless person that occurred in an alley), *rev. denied* (Nov. 18, 2003); *In re Welfare of*

8

*C.M.P.*, No. C6-98-751, 1998 WL 846519, at *1 (Minn. App. Dec. 8, 1998) (involving criminal sexual conduct against a physically helpless person that occurred in a ditch outside).

Equally important, nothing in *Tucker* requires a different conclusion. In *Tucker*, we considered a different aggravating factor with very specific language—whether the victim of the crime "was treated with *particular* cruelty for which the individual offender should be held responsible." *Tucker*, 799 N.W.2d at 586 (emphasis added) (citation omitted) (internal quotation marks omitted); *see also* Minn. Sent. Guidelines 2.D.3.b(2). We reasoned that the term "particular" meant "distinctive among others of the same kind," "markedly unusual," or "noteworthy as being peculiar." *Tucker*, 799 N.W.2d at 586–87 (citation omitted) (internal quotation marks omitted). We said therefore that the factor of " '[p]articular cruelty' involves the gratuitous infliction of pain and cruelty 'of a kind not usually associated with the commission of the offense in question.' " *Id.* at 586 (quoting *Rourke*, 773 N.W.2d at 922).

Applying that understanding, we held that Tucker's conduct did not meet the plain meaning of "particular cruelty" when he "fired a single shot . . . into the driver's side of the car's windshield" and fled without rendering aid. *Id.* at 588. In doing so, we examined the egregious and gratuitous facts in other cases of second-degree unintentional felony murder in which we had upheld an upward departure for "particular cruelty." *Id.* at 587. We then concluded, by contrast, that Tucker's behavior "was of a kind *usually* associated with the commission of the offense in question." *Id.* We reasoned that because unintentional felony murder typically involves the level of cruelty that Tucker imposed on his victim, his

9

conduct was not particularly cruel. *Id.* at 587–88. In other words, the facts of his crime did not meet the aggravating factor set forth in the sentencing guidelines.

Unlike the aggravating factor in *Tucker,* the zone-of-privacy aggravating factor here contains no term like "particularly" to constrain its application to markedly unusual or distinctive circumstances. *Compare* Minn. Sent. Guidelines 2.D.3.b(2) (listing as an aggravating factor that "[t]he victim was treated with particular cruelty for which the offender should be held responsible") *with id.* at 2.D.3.b(14) (listing as an aggravating factor that "[t]he offense was committed in a location in which the victim had an expectation of privacy"). Moreover, distinct from other aggravating factors listed in the guidelines, the zone-of-privacy aggravating factor is not limited to certain types of offenses. *See* Minn. Sent. Guidelines 2.D.3.b(4)–(5) (establishing aggravating factors for a "major economic offense" and a "major controlled substance offense").

Rather, the plain language of the zone-of-privacy factor focuses solely on *where* the offense was committed and not on the *type* of case committed or *how* it was committed. Because the psychological effect on the victim is more pernicious when the crime in question occurs in a place where the victim has an expectation of privacy than when the crime occurs in a place where the victim does not have that same sense of security, *Van Gorden*, 326 N.W.2d at 635, the zone-of-privacy aggravating factor permits (but does not require) sentencing departures for crimes occurring, as here, in the victim's home. Simply put, if the facts show that an offense is "committed in a location in which the victim

had an expectation of privacy," a district court has discretion to impose an upward departure.[3]  Minn. Sent. Guidelines 2.D.3.b(14).

Although not cited by Vanengen, *State v. Cermak* does not alter our analysis. 344 N.W.2d 833 (Minn. 1984).  In *Cermak*, we upheld substantial upward sentencing departures on each count of first-degree criminal sexual conduct involving six children. *Id.* at 839.  The upward departures were not based upon any recognized aggravating factor in the sentencing guidelines,[4] but upon the district court's conclusion that specific facts made Cermak's conduct "sufficiently different in degree to justify the durational departure." *Id.* at 839.  Even though we had previously recognized that crimes occurring in the victim's zone of privacy could justify an upward departure under certain circumstances, *see, e.g.*, *State v. Morales,* 324 N.W.2d 374 (Minn. 1982), we found those "cases of forcible rape in which strangers intruded into the victim's zone of privacy" inapposite to cases of incest that usually occur at home.  *Cermak*, 344 N.W.2d at 840.

Notably, *Cermak* took place almost three decades before the Sentencing Guidelines Commission and the Minnesota Legislature adopted the broad language that recognizes

---

[3]    Importantly, district courts are not *required* to depart from the guidelines when criminal sexual conduct occurs in the victim's zone of privacy.  Rather, consistent with the guidelines, district courts *may* depart in such cases. *See*, *e.g.*, Minn. Sent. Guidelines 2.D.1 ("A departure is not controlled by the Guidelines, but rather, is an exercise of judicial discretion constrained by statute or case law."); *id.* at 2.D.1.d ("Because departures are by definition exceptions to the Guidelines, the departure factors in this section are advisory, except as otherwise established by case law."); *id.* at 2.D.3.b. ("The following is a nonexclusive list of [aggravating] factors that *may* be used as reasons for departure." (emphasis added)).

[4]    At that time, the sentencing guidelines listed only five aggravating factors and did not include the zone of privacy.  Minn. Sent. Guidelines II.D.2.b (1983).

that committing an offense in a victim's zone of privacy is a substantial and compelling reason to justify an upward departure by, respectively, adding it as a permissible aggravating factor to the guidelines and enacting it into law. *See* Minn. Sent. Guidelines Comm'n, *Adopted Modifications to the MN Sentencing Guidelines and Commentary* 5 (2009) (adopting the zone-of-privacy aggravating factor); Act of May 11, 2009, ch. 59, art 5, § 8, 2009 Minn. Laws 1, 21 (codified as amended at Minn. Stat. § 244.10, subd. 5a(a)(14)). As discussed above, the language of the zone-of-privacy aggravating factor does not restrict its application only to certain crimes that occur in unusual or distinctive circumstances. *See Parker*, 901 N.W.2d at 929 (concluding that "nothing in the sentencing statute" suggested that the zone-of-privacy aggravating factor could be applied only when one of the rationales that this court had articulated for this aggravating factor was present).

In sum, when a jury finds beyond a reasonable doubt that the facts show that a sexual assault of a physically helpless victim occurred at a place within the victim's zone of privacy, the district court has discretion to impose an upward departure. For the reasons given above, we conclude that the zone-of-privacy aggravating factor was a legally permissible reason to depart in this case.

B.

Having concluded that the zone of privacy is a legally permissible reason to depart in a case of criminal sexual conduct against a physically helpless person, we next consider if the departure was factually supported in the record. *See State v. Edwards*, 774 N.W.2d 596, 601 (2009) (stating that we affirm an upward departure if "the reasons given for an

12

upward departure are legally permissible and factually supported in the record"); Minn. Sent. Guidelines 2.D cmt. 2.D.102 ("If the departure facts are proved beyond a reasonable doubt, the court may exercise its discretion to depart from the presumptive sentence."). Here, Vanengen never argued that the departure was not factually supported. At the close of trial, the jury returned a special verdict that Vanengen sexually assaulted A.F. in her zone of privacy; this finding is supported by the undisputed evidence that the assault occurred in A.F.'s bedroom. The jury's finding in the special verdict factually supports the departure.

Vanengen's criminal sexual conduct against a physically helpless person occurred in the victim's zone of privacy, a place where she must return daily after the assault and where she is entitled to the utmost safety and security. Accordingly, we hold that the district court did not abuse its discretion by ordering an upward durational sentencing departure.

**CONCLUSION**

For the foregoing reasons, we affirm the decision of the court of appeals.