STATE of Minnesota, Respondent,

v.

Christopher SIMS, Appellant.

No. CX–96–179.

Court of Appeals of Minnesota.

Aug. 13, 1996.

Review Denied Oct. 29, 1996.

Hubert H. Humphrey III, Attorney General; Susan Gaertner, Ramsey County Attorney, Mark Nathan Lystig, Assistant County Attorney, St. Paul, for Respondent.

Bradford Colbert, Assistant State Public Defender, St. Paul, for Appellant.

Considered and decided by PARKER, P.J., and RANDALL and SCHULTZ, JJ.

## OPINION

HAROLD W. SCHULTZ,* Judge.

Appellant Christopher Lamont Sims challenges the district court's decision to sentence him to one and one-half times the guidelines sentence pursuant to the parties' agreement following Sims's guilty plea to second-degree unintentional murder. We affirm.

## FACTS

On January 14, 1995, 16–year–old Sims and 20–year–old Jose Amaya left Amaya's apartment at 100 West California in St. Paul with a loaded .44 caliber revolver. They walked a few blocks to a grocery store and called for a City Wide cab from a pay phone. When the cab arrived at the grocery store, Sims and Amaya told the driver to take them back to 100 West California. During the course of the ride Amaya pulled out the revolver, demanded the driver's money and wallet and repeatedly threatened his life, despite the fact that the driver complied with his every demand. Amaya eventually ordered the driver to stop the cab. Sims jumped out of the car and began running. When he was 35 feet away from the cab, Sims heard the gunshot that killed the driver. Sims and Amaya ran to Amaya's apartment; neither sent for help.

Amaya and Sims split the money stolen from the driver. They burned the pictures in his wallet and Sims kept the wallet in a closet in his mother's home. Neither Sims nor Amaya reported the crime, but both later bragged to their friends that they "killed the cab driver." Police arrested Sims April 7, 1995. Sims admitted to the crime, implicated Amaya, and led police to the driver's wallet. He was charged with second-degree intentional murder.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

On May 16, 1995, Sims waived his right to a certification hearing and filed a petition to enter a guilty plea to second-degree felony murder. The petition signed by Sims provided, among other items, that he understood: (1) he had the right to proceed to trial and have a jury determine his innocence or guilt; (2) the maximum sentence the court could impose in his case, should a jury find him guilty of the crime for which he was charged, is 40 years in prison; and (3) his attorney and the prosecuting attorney agreed that the prosecutor would withdraw the charge of second-degree intentional murder in exchange for his plea.

At the guilty plea hearing, the court first had Sims's attorney question him about waiving his right to a certification hearing. Sims testified he was waiving such right on advice of counsel. Thereafter, Sims's attorney questioned him regarding the items required by rule 15 of the rules of criminal procedure for validly accepting a guilty plea, including whether Sims understood he had the right to have a jury determine his guilt. Sims agreed that he was intentionally and voluntarily giving up his right to proceed to trial in exchange for being sentenced to 216 months for unintentional murder. The district court questioned Sims to establish a factual basis for the claim and then accepted the plea.

At the sentencing hearing, Sims's attorney stated on the record that her client agreed to join in the recommendation that he be sentenced to one and one-half times the guidelines sentence. The court accepted the parties' joint stipulation and sentenced Sims to 216 months, noting the "cruelness and heartlessness" of the crime, and that such sentence represented a one and one-half upward durational departure from the guidelines sentence. With a new public defender, Sims filed a notice of appeal to this court.

## ISSUE

Does the supreme court's holding in *State v. Givens*, 544 N.W.2d 774, 776 (Minn.1996), apply to a defendant sentenced before *Givens'* release date of March 8, 1996?

## ANALYSIS

The Minnesota Sentencing Guidelines are intended to promote rational and consistent sentencing. *State v. Givens*, 544 N.W.2d 774, 776 (Minn.1996). While there are only a small number of cases where substantial and compelling circumstances will militate toward departing from the guidelines sentence, the decision to depart is one for the trial court. Minn. Sent. Guidelines cmt. II. D.01. This court will not overturn a sentence unless the district court has clearly abused its discretion. *Givens*, 544 N.W.2d at 776.

Prior to *Givens*, a sentencing court could not base a departure from the guidelines sentence solely on a plea agreement between the parties. *See State v. Garcia*, 302 N.W.2d 643, 647 (Minn.1981). In March of this year, however, the supreme court changed the law, holding that a defendant can waive his or her right to be sentenced according to the guidelines. *Givens*, 544 N.W.2d at 777. Such a waiver, the supreme court held, must be knowing, intelligent, and voluntary. *Id.* The defendant must have been advised of his or her right to be sentenced under the guidelines and given an opportunity to consult counsel. *Id.* Finally, the waiver must be approved by the court. *Id.* An examination consistent with the approach of rule 15 of the Minnesota Rules of Criminal Procedure, the procedure used for acceptance of plea agreements, will meet this requirement. *Id.* Sims argues *Givens* cannot apply to this case because Sims was sentenced before the supreme court decided *Givens* on March 8, 1996. We disagree.

The Constitution neither prohibits nor requires retrospective application of a new rule of criminal law. *State v. Olsen*, 258 N.W.2d 898, 907 n. 15 (Minn.1977). A balancing formula is applied to determine whether a rule should be retroactive or principally prospective. *Id.* The considerations include: (1) the purpose to be served by the new rule; (2) the extent of reliance by law enforcement on the old rule; and (3) the effect on the administration of justice of a retroactive application of the new rule. *Id.* The supreme court, however, when announcing new rules of law, has explicitly so provided when it intends "prospective only" ap-

plication of a rule, making retroactive and prospective application of case law the norm. *See State v. Scales,* 518 N.W.2d 587, 593 (Minn.1994) (prospective only application of recording requirement); *Williams v. State,* 361 N.W.2d 840, 844 (Minn.1985) (prospective only application of sentencing rules); *see also Turner v. IDS Financial Servs., Inc.,* 471 N.W.2d 105, 108 (Minn.1991) (court's rulings are purely prospective only in very limited situations).

*Givens* did not provide that it is to be applied in a purely prospective manner. In fact, *Givens* stressed that courts have a long history of honoring a defendant's lawful, intentional relinquishment of known rights, and relied on such history in creating its new rule of law. 544 N.W.2d at 777 (citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Additionally, the burden on the administration of justice of applying *Givens* retroactively would be slight because *Givens* requires that the court properly accept the plea supporting the departure under rule 15 of the rules of criminal procedure. 544 N.W.2d at 777. Courts are required to follow rule 15 to validly accept any guilty plea. *See* Minn. R.Crim. P. 15. Accordingly, we conclude the supreme court did not intend purely prospective application of its holding in *Givens.*

 Sims's attorney advised him of his right to proceed to trial and advised him of the guidelines sentence he would receive if convicted of the crime charged. Sims acknowledged understanding these rights on the record both at the guilty plea hearing and in writing. He agreed on the record that he had enough time to consult with his attorney concerning the plea and that he understood the consequences of his actions. Sims's attorney questioned him on the record concerning the items required by rule 15 and Sims signed a written statement that he understood all such items. The court questioned Sims to determine that a valid factual basis existed for the plea, entered the plea, and sentenced Sims according to the joint stipulation. We conclude such examination satisfies *Givens*'s requirement that a departure based upon a plea agreement be entered knowingly, intelligently, and voluntarily.

■ Finally, we note the record independently supports the departure. The district court noted the "cruelness and heartlessness" of this crime at the sentencing hearing. The court also noted the profound impact of the driver's death on his family and the community of St. Paul. Our review of the record shows that: (1) Amaya and Sims set out with a loaded gun to rob a cab driver; (2) Amaya threatened the driver's life repeatedly for no reason; (3) Amaya and Sims left the driver to die without calling help; (4) Amaya and Sims split the money stolen from the driver; (5) Sims hid the driver's wallet in his mother's home; and (6) Amaya and Sims bragged to their friends about killing the cab driver. Such evidence demonstrates the particular cruelty involved in the commission of this crime. *See* Minn. Sent. Guidelines II. D.2.b.2 (one aggravating factor the court may consider when departing is particular cruelty). Accordingly, we conclude Sims's sentence is supported by evidence in the record.

### DECISION

Sims's sentence, representing a one and one-half upward durational departure, was validly accepted by the court as a knowing, intelligent, and voluntary waiver of Sims's right to be sentenced under the guidelines pursuant to *Givens,* and is adequately supported by the evidence in the record.

**Affirmed.**