Clemmie Howard TUCKER,
Jr., Appellant,

v.

STATE of Minnesota, Respondent.

No. A09–666.

Supreme Court of Minnesota.

June 29, 2011.

David W. Merchant, Chief Appellate Public Defender, Ngoc Nguyen, Assistant Public Defender, St. Paul, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, MN, for respondent.

## OPINION

STRAS, Justice.

Appellant Clemmie Howard Tucker pleaded guilty to second-degree unintentional felony murder, Minn.Stat. § 609.19, subd. 2(1) (2010). Under the terms of the plea agreement, the district court sentenced Tucker to 225 months in prison. The sentence represented an upward durational departure from the presumptive sentencing range of 128 to 180 months for a defendant convicted of second-degree unintentional murder with Tucker's criminal history score. Tucker filed a petition for postconviction relief in which he claimed the sentencing court abused its discretion when it imposed an upward departure based on particular cruelty to his victim. The court of appeals affirmed the denial of postconviction relief on the ground that Tucker's failure to render aid to his victim constituted particular cruelty. We granted Tucker's petition for review, and now reverse and remand for further proceedings.

### I.

Early in the morning of June 24, 2005, Tucker left the 200 Club in North Minne-

apolis with his girlfriend, Angelina Garley. Tucker drove his truck behind Garley's car, engaging in a "cat and mouse sort of chase" to induce her to pull over to the side of the road. Garley eventually pulled over to the side of the road. Tucker then parked his truck next to Garley's car, exited the truck, pulled out a .45 caliber pistol, and fired a single shot through the driver's side of the windshield of Garley's car. Garley was still in the driver's seat when Tucker fired the shot in her direction. Immediately after the shooting, Tucker climbed back into his truck and fled the scene. At some point thereafter, Tucker called 911 to report his pistol missing, but he did not mention the shooting or that Garley might be injured.

Shortly after the shooting, the police responded to reports of a gunshot and a woman calling for help. The police found Garley in her car bleeding and having trouble breathing. Garley later died at the hospital as a result of a single gunshot wound to the chest from a .45 caliber bullet.

Based on the police investigation, the State charged Tucker with one count of second-degree intentional murder. On February 27, 2006, Tucker pleaded guilty to an amended charge of second-degree unintentional felony murder committed during a second-degree felony assault pursuant to Minn.Stat. § 609.19, subd. 2(1) (2010).[1] That crime carries a presumptive sentencing range of 128 to 180 months for a defendant with Tucker's criminal history score. However, Tucker entered into a plea agreement with the State that called for an upward durational departure of 75 months from the presumptive sentence of

150 months based on two aggravating factors: (1) invasion of the victim's zone of privacy and (2) particular cruelty for failing to render medical assistance to the victim. The district court accepted the plea, convicted Tucker, and imposed a 225–month executed prison sentence.

Tucker filed a petition for postconviction relief, which the postconviction court denied without an evidentiary hearing. The court of appeals then remanded the case to the postconviction court for the appointment of a public defender. After appointing a public defender and considering the parties' arguments on remand, the postconviction court concluded that the sentencing court abused its discretion when it relied on the zone-of-privacy factor to impose an upward durational departure in Tucker's case. The postconviction court nonetheless denied Tucker's petition for postconviction relief on the ground that Tucker's failure to seek medical aid for Garley after the shooting constituted "particular cruelty," a recognized basis for departure under the Minnesota Sentencing Guidelines ("Sentencing Guidelines"). Minn. Sent. Guidelines II.D. The court of appeals affirmed, holding that a reasonable person in Tucker's circumstances would have realized the risk of injury to Garley, and that Tucker acted in a particularly cruel manner by failing to render assistance to her under the circumstances. *Tucker v. State*, 777 N.W.2d 247, 251 (Minn.App.2010). We granted Tucker's petition for review.

## II.

Generally, we review an upward departure from the presumptive guidelines

---

1. Second-degree unintentional felony murder requires a person to "cause[ ] the death of a human being, without intent to effect the death of any person, while committing or attempting to commit a felony offense." Minn.Stat. § 609.19, subd. 2(1). The definition of second-degree assault, meanwhile, requires "assault[ing] another with a dangerous weapon and inflict[ing] substantial bodily harm." Minn.Stat. § 609.222, subd. 2 (2010).

sentence for an abuse of discretion. *State v. Jackson,* 749 N.W.2d 353, 356–57 (Minn. 2008). A postconviction court's decision to deny a postconviction petition "will not be disturbed 'unless the . . . court abused its discretion, exercised its discretion in an arbitrary or capricious manner, or based its ruling on an erroneous view of the law.'" *Dobbins v. State,* 788 N.W.2d 719, 725 (Minn.2010) (alteration in original) (citation omitted). An upward departure will be reversed if the sentencing court's articulated reasons for the departure are " 'improper or inadequate' " and the evidence in the record is insufficient to justify the departure. *Jackson,* 749 N.W.2d at 357 (quoting *Taylor v. State,* 670 N.W.2d 584, 588 (Minn.2003)).

■ The Sentencing Guidelines promote uniformity, proportionality, rationality, and predictability in sentencing. *State v. Misquadace,* 644 N.W.2d 65, 68 (Minn. 2002). A goal of the Sentencing Guidelines is to ensure that "sanctions following conviction of a felony are proportional to the severity of the offense of conviction and the extent of the offender's criminal history." Minn. Sent. Guidelines I; *Jackson,* 749 N.W.2d at 357. To ensure uniformity and proportionality in sentencing, "departures from the presumptive guidelines sentence are discouraged." *Jackson,* 749 N.W.2d at 357. Thus, a district court may depart from the presumptive guidelines sentencing range only if "there exist identifiable, substantial, and compelling circumstances to support a sentence outside the range on the grids." Minn. Sent.

Guidelines II.D. "Substantial and compelling circumstances are those demonstrating that 'the defendant's conduct in the offense of conviction was *significantly* more or less serious than that typically involved in the commission of the crime in question.'" *State v. Jones,* 745 N.W.2d 845, 848 (Minn.2008) (alteration in original) (quoting *Misquadace,* 644 N.W.2d at 69).

■ To aid a court in exercising its discretion to depart from a presumptive guidelines sentence, the Sentencing Guidelines articulate "a nonexclusive list of factors which may be used as reasons for departure." Minn. Sent. Guidelines II.D.2. One factor listed in the Sentencing Guidelines that provides a permissible explanation for departure is if the victim of the crime "was treated with particular cruelty for which the individual offender should be held responsible." Minn. Sent. Guidelines II.D.2.b(2). Based upon the facts admitted in Tucker's guilty plea, and after a valid waiver of a *Blakely* jury, the sentencing court concluded that Tucker's "particular cruelty and failure to render aid" to Garley warranted an upward durational departure.[2] We disagree.

■ " '[P]articular cruelty' involves the gratuitous infliction of pain and cruelty 'of a kind not usually associated with the commission of the offense in question.'" *State v. Rourke,* 773 N.W.2d 913, 922 (citation omitted); *see also Webster's Third International Dictionary of the English Language Unabridged* 1646–47 (2002) (defining the word "particular" as "distinctive

---

**2.** The sentencing hearing transcript raises the possibility that the sentencing court based the upward durational departure on both "particular cruelty and failure to render aid," even though the latter is not listed as a separate basis for departure in the Sentencing Guidelines. The most reasonable interpretation, as evidenced by the arguments of the parties and the treatment of the sentencing departure by the court of appeals, is that the sentencing court imposed the upward departure because Tucker's failure to render aid to Garley constituted "particular cruelty." We need not resolve the ambiguity in the sentencing transcript, however, because under either interpretation the sentencing court abused its discretion in imposing the upward departure.

among others of the same kind," "markedly unusual," or "noteworthy as being peculiar"); *The American Heritage Dictionary of the English Language* 1282 (4th ed.2009) (defining "particular" as "[s]eparate and distinct from others of the same group"). Thus, although every second-degree unintentional felony murder will undoubtedly involve some degree of cruelty, a district court may use particular cruelty as a basis for departure only when the cruelty associated with the crime for which the defendant was convicted is "of a kind not usually associated with the commission of the offense in question." Short of a finding of this nature, a district court abuses its discretion in imposing an upward departure based on particular cruelty.

■ Furthermore, although the failure to aid is relevant to whether a person convicted of a crime has acted in a particularly cruel manner, we have never affirmed a departure for particular cruelty based solely on the failure to render medical aid.[3] *See, e.g., State v. Jones*, 328 N.W.2d 736, 738 (Minn.1983) (finding multiple grounds for departure when defendant participated in the aggravated robbery of an elderly victim and then left the injured, helpless victim secluded in victim's apartment); *State v. Stumm*, 312 N.W.2d 248, 249 (Minn.1981) (finding multiple grounds for departure when defendant, while babysitting, repeatedly punched his girlfriend's 2–year–old child and then failed to seek help even after the child exhibited obvious signs of injury). Rather, we have consistently required the "gratuitous infliction of pain and cruelty 'of a kind not usually associated with the commission of the offense in question.'" *Rourke*, 773 N.W.2d at 922 (citation omitted); *see also, e.g., State v.*

*Ming Sen Shiue*, 326 N.W.2d 648, 654–55 (Minn.1982) (noting that putting the victim in acute fear of death, killing her, and then concealing the body was particularly cruel); *cf. State v. Traylor*, 641 N.W.2d 335, 342 (Minn.App.2002), *rev'd on other grounds*, 656 N.W.2d 885 (Minn.2003) (holding that the district court did not abuse its discretion in imposing a double durational departure based on particular cruelty because the defendant repeatedly abused the victim after stabbing her and actively prevented her from receiving medical attention); *State v. Sims*, 553 N.W.2d 58, 61 (Minn.App.1996) (concluding that needlessly threatening the victim before eventually killing the victim and then bragging about the murder was deemed particularly cruel); *State v. Gurske*, 424 N.W.2d 300, 305 (Minn.App.1988) (noting that burning a victim's body while the victim might have been alive was particularly cruel).

Here, the cruelty associated with the commission of Tucker's offense was of a kind *usually* associated with the commission of the offense in question. Fleeing the scene of the offense and abandoning the victim is *typical* behavior for those defendants convicted of second-degree unintentional felony murder. *See, e.g., State v. Delk*, 781 N.W.2d 426, 428 (Minn.App. 2010), *rev. denied* (Minn. July 20, 2010); *State v. Lory*, 559 N.W.2d 425, 427 (Minn. App.1997), *rev. denied* (Minn. Apr. 15, 1997); *State v. Lohmeier*, 390 N.W.2d 882, 884 (Minn.App.1986), *rev. denied* (Minn. Oct. 29, 1986).

Moreover, although the shooting no doubt inflicted great pain on Garley, the record does not show, nor did the sentencing court articulate, how this particular

---

**3.** We do not suggest that the failure to seek medical aid for a victim, standing alone, can never be the basis for an upward departure for particular cruelty. Behavior that is typi-cal for one type of crime might provide a basis for a permissible departure for "particular cruelty" in the context of a different crime for which the behavior would be atypical.

gunshot wound inflicted greater pain and cruelty than the typical second-degree unintentional felony murder. Tucker did not shoot Garley in a manner that gratuitously inflicted additional pain. Nor did Tucker torture Garley or do any other act that gratuitously inflicted additional pain. Unlike other cases in which a finding of particular cruelty has been upheld, Tucker did not stay at the scene and actively ward off medical assistance or isolate Garley in such a way that it was difficult or impossible to render medical assistance to her. *See, e.g., Jones,* 328 N.W.2d at 737; *Traylor,* 641 N.W.2d at 342. Instead, Tucker fired a single shot from a .45 caliber pistol into the driver's side of the car's windshield, hitting the victim, and then fled the scene of the crime. Tucker later called 911 to report his pistol stolen without telling the dispatcher about the shooting, but that act, while deceptive, did not gratuitously inflict additional pain or suffering on the victim. Permitting an upward departure under these circumstances fails to apply the plain meaning of the phrase "particular cruelty," disregards the fundamental requirement permitting sentencing departures only when a defendant's conduct in the commission of an offense is significantly more serious than that typically involved in the commission of the offense in question, and undermines uniformity and proportionality in sentencing.[4]

### III.

For the foregoing reasons, we conclude that Tucker's petition for postconviction relief and the files and records of the proceedings conclusively show that Tucker is entitled to postconviction relief because the sentencing court's reason for departure was improper. Accordingly, we reverse the postconviction court's denial of relief and remand for further proceedings consistent with the opinion.

Reversed and remanded.

STRAS, J. Concurring, PAGE, J. Concurring, ANDERSON, G. BARRY, J., GILDEA, C.J., and DIETZEN, J.

PAGE, Justice (concurring).

Although I join in the reasoning and analysis of the court's opinion authored by Justice Stras as it relates to the inapplicability of the aggravating factor of particular cruelty to this case, I write separately because I believe Tucker's upward departure fails for a more fundamental reason: Tucker's failure to aid Garley constituted an uncharged offense and thus is an invalid ground for any upward departure.

Under the Minnesota Sentencing Guidelines, a district court may depart from the presumptive sentence only by "disclos[ing] in writing or on the record the particular substantial and compelling" circumstances justifying the departure. Minn. Sent. Guidelines II.D; *see State v. Jackson,* 749 N.W.2d 353, 360 (Minn.2008). The Sentencing Guidelines provide a non-exhaustive list of factors that may warrant an upward departure, including when the victim was treated in a particularly cruel manner. Minn. Sent. Guidelines II. D.2.b(2). However, the district court is

---

4. It is possible that Tucker's conduct also violates Minn.Stat. § 609.662, subd. 2 (2010), which provides that "[a] person who discharges a firearm and knows or has reason to know that the discharge has caused bodily harm to another person, shall: (1) immediately investigate the extent of the person's injuries; and (2) render immediate reasonable assistance to the injured person." Although

Tucker's failure to render aid to Garley could constitute an impermissible ground for departure based on an uncharged criminal offense, *see State v. Edwards,* 774 N.W.2d 596, 602 (Minn.2009), we need not decide that question because Tucker failed to raise it either before the district court or on appeal, *see State v. Finnegan,* 784 N.W.2d 243, 248 n. 3 (Minn.2010).

"not permitted to impose an upward departure if the sentence will unfairly exaggerate the criminality of the defendant's conduct, or punish a defendant twice for the same conduct." *State v. Edwards*, 774 N.W.2d 596, 601 (Minn.2009). As such, the district court may only rely upon certain facts to justify a departure. *See id.* at 602.

In *Edwards*, we articulated several guiding principles to "assist the district court in determining what facts are 'available' for departure." 774 N.W.2d at 601–02. As relevant to this case, one of those guiding principles was to limit "the availability of facts underlying a separate offense to support an upward departure for the conviction at issue." *Id.* at 602. We stated that "facts underlying an uncharged *separate* incident are an impermissible basis for departure because those facts do not show that the offense being sentenced was committed in a particularly serious way." *Id.* (discussing *State v. Ott*, 341 N.W.2d 883, 884 (Minn.1984)).

Although neither party briefed this issue, I believe that Tucker's failure to aid violates Minn.Stat. § 609.662, subd. 2 (2010). Subdivision 2 provides that "[a] person who discharges a firearm and knows or has reason to know that the discharge has caused bodily harm to another person, shall: (1) immediately investigate the extent of the person's injuries; and (2) render immediate reasonable assistance to the injured person." When the discharge of a firearm results in death, the punishment for failing to investigate and/or provide aid is imprisonment for no more than two years and/or a fine of no more than $4,000. Minn.Stat. § 609.662, subd. 2(b)(1). Here, Tucker discharged his .45 caliber pistol into the driver's side of the windshield of Garley's car, knowing that Garley was still seated in the driver's seat of her car. Based on these facts, in my view, and the court of appeals held as much, Tucker either knew or had reason to know that his discharge of the gun very likely caused bodily harm to Garley. *See Tucker v. State*, 777 N.W.2d 247, 251 (Minn.App.2010).

As a result, I believe that, under section 609.662, subdivision 2(b)(1), Tucker's failure to aid was a separate offense for which he was not charged and thus as a matter of law cannot be grounds for an upward departure. Consequently, because the upward departure here fails as a matter of law and as a matter of fact, remand to the postconviction court for resentencing is appropriate.

G. BARRY ANDERSON, Justice (concurring).

I concur in the result. I write separately because the court of appeals invented and applied an objective, "reasonable person" rule that has no support in the Minnesota Sentencing Guidelines or in our jurisprudence. In my view, the approach taken by the court of appeals in this case is an error of law that must be corrected, and the majority opinion glosses over the error and opens the door to similar errors in other sentencing cases.

I begin with a brief outline of the jurisprudence that governs this case. When sentencing a criminal defendant, a district court may depart from the presumptive penalty defined by the Sentencing Guidelines if "there exist identifiable, substantial, and compelling circumstances to support a sentence outside the range on the [guideline] grids." Minn. Sent. Guidelines II.D. We have explained that

> [t]he phrase "there exist identifiable, substantial, and compelling circumstances to support a sentence outside the range on the grids," reflects two distinct requirements for an upward sentencing departure: (1) a factual find-

ing that there exist one or more circumstances not reflected in the guilty verdict or guilty plea, and (2) an explanation by the district court as to why those circumstances create a substantial and compelling reason to impose a sentence outside the range on the grid.

*State v. Rourke,* 773 N.W.2d 913, 919 (Minn.2009).

In *Rourke,* we referred to the circumstances not reflected in the verdict or guilty plea as "additional facts." *Id.* at 919 n. 5. To satisfy the first *Rourke* requirement, the additional facts must be admitted by the defendant or proved to a jury beyond a reasonable doubt. *Id.; see also Blakely v. Washington,* 542 U.S. 296, 301, 303–04, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); *United States v. Booker,* 543 U.S. 220, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). When a court, in accordance with the second *Rourke* requirement, explains why the additional facts warrant a sentence greater than a presumptive guideline sentence, the court may rely on the nonexclusive list of reasons set forth in the Sentencing Guidelines. See Minn. Sent. Guidelines II.D.

Included in the Sentencing Guidelines list of reasons is the aggravating factor that the "victim was treated with particular cruelty for which the individual offender should be held responsible." Minn. Sent. Guidelines II.D.2.b(2). As the majority states, we explained in *Rourke* that the "particular cruelty" explanation is adequate when the cruelty involved in a crime is "of a kind not usually associated with the commission of the offense in question." *See supra* at 586 (citing *Rourke,* 773 N.W.2d at 922 (citation omitted) (internal quotation marks omitted)). We have defined "cruelty" as the "[g]ratuitous infliction of pain." *State v. Schantzen,* 308 N.W.2d 484, 487 (Minn.1981).

Failure to obtain medical care for a victim is not included in the guidelines list of aggravating factors. On two occasions, we have affirmed a sentencing departure explanation that has referenced a defendant's failure to obtain medical care for the victim. *State v. Jones,* 328 N.W.2d 736, 738 (Minn.1983); *State v. Stumm,* 312 N.W.2d 248, 249 (Minn.1981). In those cases, the defendant's failure to obtain medical care for the victim involved an intentional act that gratuitously prolonged the victim's suffering. *See Jones,* 328 N.W.2d at 737 (noting that Jones left the badly beaten victim alone in his apartment); *Stumm,* 312 N.W.2d at 249 (noting that Stumm did not inform the mother of a two-year-old that he had struck the child while caring for the child, even after the child vomited several times after the assault, and affirming the decision of the district court to impose an aggravated sentence in part on Stumm's indifference toward caring for the child after the beating). We recently noted that these failure-to-seek-aid cases were decided in the "early stages of the determinate [sentencing] guidelines system" and that guidelines have "since been adjusted, substantially increasing sentence durations." *State v. Jones,* 745 N.W.2d 845, 849 (Minn.2008) (citation omitted) (internal quotation marks omitted).

In accord with *Rourke,* I consider the proper question to be answered here is whether a "particular cruelty" explanation provides a substantial and compelling reason to depart from the presumptive sentence based on the additional facts admitted by Tucker. I first consider the additional facts admitted by Tucker.

Tucker pleaded guilty to second-degree unintentional felony murder. His guilty plea reflected his admission that he caused Garley's death while committing a felony assault, without intending to cause her death or the death of any person. *See*

Minn.Stat. § 609.19, subd. 2(1) (2010). Relevant to this appeal, Tucker admitted at his guilty plea hearing that he called 911 after the shooting to report that his gun had been stolen, and not to report that Garley needed medical assistance. And the following exchange occurred:

[THE STATE]: And you would agree that you didn't do anything that evening to try to get [Garley] help so that she might have recovered from these injuries?

[TUCKER]: I didn't know she was hurt.

[THE STATE]: But after you shot her you didn't call for help[,] correct?

[TUCKER]: I didn't know I shot her, ma'am, but yes.

The State did not challenge Tucker's assertion that he did not know Garley was shot or hurt. The State did not develop facts that shed light on the credibility of Tucker's statement that he did not know Garley was shot or hurt. For example, the State did not ask whether Tucker could see Garley when he fired the gun, nor whether Tucker saw that the bullet hit the windshield. The State did not ask what Tucker did after he fired the gun, nor how long Tucker remained at the scene. Without additional factual information about Tucker's conduct at the scene of the shooting, I conclude that the only additional facts in the record that are possibly relevant to whether an upward departure for particular cruelty is warranted are, first, that Tucker did not render or obtain aid for Garley when he called 911 or at any other time, and, second, that Tucker did not know that Garley was hit by the bullet or injured.

I would hold that based on the additional facts admitted by Tucker, a "particular cruelty" explanation does not provide a substantial and compelling reason to depart from the Sentencing Guidelines. I reach this result because, unlike the defendants in *Jones* and *Stumm,* Tucker did not admit any additional facts demonstrating that his failure to obtain medical care for Garley gratuitously prolonged her suffering.

Contrary to our sentencing jurisprudence, the court of appeals reached beyond the facts of this case and considered not only what Tucker did, but also what "[a] reasonable person in Tucker's circumstances, even lacking verification of [Garley's] injury, would have to assume" about what happened to Garley. *Tucker v. State,* 777 N.W.2d 247, 251 (Minn.App.2010). The court asserted that a reasonable person in Tucker's circumstances "would have to assume that a bullet fired ... into the area of a car in which another person was seated likely hit and injured that person." *Id.* The court concluded: "Whether [Tucker] actually knew of [Garley's] injury is not dispositive because Tucker should have known of that possibility. His 'particular' cruelty—beyond that of the crime itself—was his indifference as to whether [Garley] was in fact injured and needed medical attention." *Id.*

To reach this conclusion, the court of appeals rejected the "[s]terile logic" that "an offender cannot be accused of failing to aid an injured victim if the offender is not aware of the injury" and instead offered the following "interpretation" of particular cruelty:

When an offender's conduct is sufficiently egregious that a reasonable person in the same circumstances would suspect that the conduct very likely caused injury to the victim, it is particularly cruel for the offender to fail to take some meaningful step, even anonymously, towards obtaining at least an investigation so as to be able to give medical aid to the victim if an examination reveals that aid is necessary.

*Id.* The court of appeals concluded that its interpretation of particular cruelty was

consistent with Minnesota sentencing-departure jurisprudence. *See id.* The court was wrong.

First, the court of appeals, and on appeal to us, the State, cite no precedent from our court that holds an offender responsible for particular cruelty in the sentencing context based on something the offender should have known. I also have found no precedent that holds an offender responsible for particular cruelty based on something the offender should have known. Similarly, we also have never found an offender responsible for particular cruelty based on an outcome that a "reasonable person ... would suspect" was "very likely" to have followed the offender's conduct. Moreover, the text of the Sentencing Guidelines undercuts the approach taken by the court of appeals. The Sentencing Guidelines list as an aggravating factor that the victim of an offense "was particularly vulnerable due to age, infirmity, or reduced physical or mental capacity, which was known or should have been known to the offender." Minn. Sent. Guidelines II.D.2.b(1). The inclusion of "should have been known" in the particular vulnerability factor stands in contrast to the absence of any such language in the particular cruelty factor, which reads in full: "The victim was treated with particular cruelty for which the individual offender should be held responsible." Minn. Sent. Guidelines II.D.2.b(2).

Second, as support for its "reasonable person" standard for evaluating particular cruelty, the court of appeals relied primarily upon our decision in *Stumm*. *See Tucker*, 777 N.W.2d at 251. But *Stumm* provides no support. In *Stumm*, the defendant was convicted of second-degree manslaughter for causing the death of his girlfriend's two-year-old child by culpable negligence. 312 N.W.2d at 248 (citing Minn.Stat. § 609.205(1) (1980)). Evidence established that the defendant struck the child in the chest more than once while the defendant was babysitting the child, that one of the blows lacerated the child's small intestine, and that the lacerated intestine led to an infection that killed the child the next day. *Id.* The defendant put the child to bed after the beating, and over the four hours that followed, checked on the child twice. *Id.* Each time, the defendant discovered that the child had vomited but left the child in bed after cleaning up the messes. *Id.* The defendant told the child's mother that the child had vomited after she discovered a third episode of vomiting more than seven hours after the beating. *Id.* But the defendant did not tell the mother that he had hit the child before the vomiting began. *Id.* At sentencing, the district court explained that an upward departure was justified "first of all" by the child's particular vulnerability due to age; by the "particular cruelty and violence administered against this child in the form of the striking ... with a fist"; and by the "apparent indifference toward caring for that child after initiating that beating." *Id.* We affirmed, finding that the reasons cited by the district court were valid and also "that the circumstances of the offense and the absolute vulnerability of the helpless victim" were sufficient to support an upward departure. *Id.*

We did not use the phrase "reasonable person" in *Stumm*. *See* 312 N.W.2d at 248. Yet, in this case, the court of appeals asserted that, in *Stumm*, "[a] reasonable person would have considered the possibility that such a beating would cause some injury to an infant and the particular cruelty lay in the offender's failure to inquire further and failure to obtain medical help if necessary." *Tucker*, 777 N.W.2d at 251. The assertion of the court of appeals is contradicted by the express statement of the district court in *Stumm* that the "particular cruelty" related to the beating itself—and not to the indifference that followed the beating. *See* 312 N.W.2d at 249. *Stumm* does not support the "reasonable

person" approach of the court of appeals. And *Stumm* is distinguishable from this case, in that the defendant in *Stumm* had actual knowledge that he beat the child—unlike here, where nothing in the record demonstrates that Tucker knew Garley was hurt.

Finally, I also write separately to underscore that the majority opinion relies upon our statement in *Rourke* that "particular cruelty involves gratuitous infliction of pain and cruelty of a kind not usually associated with the commission of the offense in question," 773 N.W.2d at 922 (citation omitted) (internal quotation marks omitted), to decide this case. I underscore this point because of my concern regarding judicially-created limitations on upward sentencing departures.[1] Nothing in the majority opinion should be read to alter or add to *Rourke*. As outlined earlier, the Sentencing Guidelines and our jurisprudence allow a district court to depart from the presumptive penalty if the departure is based on an additional fact not reflected in a guilty verdict or guilty plea and if the additional fact creates a substantial and compelling reason to impose a sentence outside the range of the grid. *See Rourke*, 773 N.W.2d at 919. In this case, the court of appeals conceded that there is no evidence that Garley would have survived if Tucker had sought aid. *Tucker*, 777 N.W.2d at 252. And the court of appeals

candidly stated that it could "only speculate" about Garley's survival, but described the possibility she might have lived if help had been called to be "at least arguable." *Id.* It may be true, as the majority asserts, that the shooting "inflicted great pain on Garley." *Supra* at 587. But the court of appeals' speculation and the majority's assumption are not additional facts that may support an upward sentencing departure. Rather, *Rourke* and our existing jurisprudence lead to the conclusion that the rationale underlying the "particular cruelty" sentencing factor—that a person should be held accountable when the person gratuitously inflicts pain in a manner not usually associated with the commission of the offense in question—fails to explain why the additional facts admitted by Tucker provide a substantial and compelling reason to depart from the presumptive sentencing range. I would reverse on that basis.

GILDEA, Chief Justice (concurring).

I join in the concurrence of Justice G. Barry Anderson.

DIETZEN, Justice (concurring).

I join in the concurrence of Justice G. Barry Anderson.

---

1. For example, in *State v. Jackson* we held, in part, that the nature of victim's injuries could not be used as an aggravating factor because the injuries constituted the uncharged offense of third-degree assault. 749 N.W.2d 353, 357–58 (Minn.2008). Because Minn.Stat. § 609.035, subd. 1 (2010), would have prohibited multiple punishments for aggravated robbery and third-degree assault (if third-degree assault had been charged), we reasoned that it was equally improper to allow multiple punishments (in the form of an enhanced sentence) when the third-degree assault was not charged. *Jackson*, 749 N.W.2d at 358. We therefore held that the victim's injuries could not be used to support a sentencing departure. *Id.* We reached this conclusion even though the Sentencing Guidelines gave no hint, let alone a specific command, that a victim's injuries could not be used to support a departure. (I note that the Legislature statutorily overruled the restriction adopted in *Jackson*, in 2009, when the Legislature adopted Minn.Stat. § 244.10, subd. 5a(b) (2010), which states that "[n]otwithstanding section 609.04 or 609.035, or other law to the contrary" the "court may order an aggravated sentence ... based on any aggravating factor arising from the same course of conduct.")