*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1270**

Michael Walton Hinton, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed March 11, 2024**
**Affirmed**
**Cochran, Judge**

Faribault County District Court
File No. 22-CR-19-184

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Cameron Davis, Faribault County Attorney, Blue Earth, Minnesota (for respondent)

Considered and decided by Larson, Presiding Judge; Cochran, Judge; and Slieter, Judge.

**NONPRECEDENTIAL OPINION**

**COCHRAN**, Judge

Appellant challenges the summary denial of his postconviction petition for relief. He argues that the postconviction court abused its discretion by rejecting his argument that

the district court improperly imposed an upward durational departure. Because we discern no abuse of discretion by the postconviction court, we affirm.

**FACTS**

In April 2019, respondent State of Minnesota charged appellant Michael Walton Hinton with two counts of kidnapping, three counts of first-degree criminal sexual conduct, one count of first-degree assault, and one count of second-degree assault with a dangerous weapon. According to the complaint, a woman called law enforcement on the morning of April 12 to report that she was assisting another woman who "had been beaten, strangled, . . . and held against her will for two days by [Hinton] at his home." Two deputies with the Faribault County Sheriff's Office responded to the woman's home in Elmore and observed the victim in "extreme pain." The victim had "multiple stab wounds" on her leg, "serious cuts" on her fingers, and bruising around her eyes.

The victim told the responding deputies that she voluntarily visited Hinton's home on April 9 and spent the night. On April 10, Hinton began assaulting the victim and did not allow her to leave his home. According to the victim, Hinton handcuffed and gagged her, sexually assaulted her, strangled her until she lost consciousness, cut her fingers with a knife when she did not "answer his questions to his satisfaction," forced her to take a two-hour bath with him, threatened to cut off her fingers and cut out her eyes, stabbed her with a knife, and hit her on the face with a pipe wrench. The victim told officers that she thought she was going to die. The victim escaped on the night of April 11, when Hinton left the home.

2

Hinton was arrested on April 12. He admitted to law enforcement that he assaulted the victim. He also admitted that he gagged the victim because "he didn't want to hear her talk anymore." Hinton confirmed that he caused the victim to become unconscious, and he said that he stabbed her because "he believed she was dead" and was trying to "wake her up."

Law enforcement executed a search warrant of Hinton's home and discovered leg irons, handcuffs, knives, and a pipe wrench. They also found blood-stained clothing, towels, and napkins "in all rooms of Hinton's home."

In May 2019, the district court granted Hinton's attorney's motion for a competency examination. *See* Minn. R. Crim. P. 20.01, subds. 3-4. In July 2019, the district court found that Hinton was incompetent to stand trial after evaluators from the Minnesota Department of Human Services (DHS) opined that Hinton's "decision-making and rational abilities relating to his legal charges are currently impaired by delusional beliefs." But in October 2019, a DHS evaluator determined that Hinton's "substance-induced psychotic symptoms" had subsided. A competency hearing was held in January 2020. Based on the evidence at the hearing, the district court concluded that Hinton's competency had been restored and that Hinton could proceed to trial.

In April 2021, Hinton reached a plea agreement with the state. Under the terms of the plea agreement, Hinton would plead guilty to the second-degree assault charge and the state would dismiss the remaining charges. There was no agreement as to the sentence for the second-degree assault charge.

Consistent with the agreement, Hinton filed a petition to enter a guilty plea to second-degree assault with a dangerous weapon in violation of Minnesota Statutes section 609.222, subdivision 1 (2018). In the petition, Hinton acknowledged that the state was seeking an aggravated sentence of 84 months—the statutory maximum sentence. Hinton also waived his right to a jury trial on the determination of whether there were any aggravating factors for the purposes of sentencing. Instead, Hinton agreed that the existence of any aggravating factors would be decided by a court trial.

At the plea hearing, Hinton confirmed that he understood the maximum penalties for "all of the charges in this matter" and that he agreed "with going forward based upon [the plea agreement]." Hinton admitted that he stabbed the victim in the leg with a knife and agreed that a knife is a dangerous weapon. Hinton did not make any other admissions regarding what happened. Finally, Hinton stated that he understood the state was asking the district court to find the existence of an aggravating factor that would support an upward departure from the presumptive sentence under the Minnesota Sentencing Guidelines, and he affirmed his waiver of a jury trial on the existence of any aggravating factors.

After the plea hearing, Hinton signed an agreement with the state stipulating to the admission of 53 pieces of evidence at the aggravated-factor trial. The evidence included photos of Hinton's home and the victim's injuries; the victim's medical records; videos and transcripts of police interviews with the victim and Hinton; the transcript of the 911 call on April 12; and police reports.

In May 2021, the district court held the aggravated-factor trial. At the trial, Hinton again acknowledged that the evidence to be considered in determining the existence of any

aggravating factors was "submitted by a stipulation." And Hinton did not object when the district court received the stipulated evidence. At the trial and in supplemental briefing, the state argued that the stipulated evidence demonstrated that Hinton treated the victim with particular cruelty, justifying an upward durational departure from the presumptive sentence for second-degree assault. Hinton argued that the state failed to meet "its burden to prove aggravating factors" and that the record did not support a determination of particular cruelty.

In a June 2021 order, the district court concluded that the state proved the aggravating factor of "particular cruelty." The district court explained its reasoning as follows:

> The Court finds Defendant Hinton's actions were significantly more serious than those typically involved in the commission of second-degree assault. During the assault, [the victim] was handcuffed and gagged. Defendant Hinton acknowledged that he left the restraints on [the victim] for hours. While he stabbed and cut [the victim], he threatened to kill her. He additionally held the knife blade to her eye and threatened to cut out her eye. After he stabbed her, he brought her into an unfinished basement and hit her with a pipe wrench. He then opened a gas valve and threatened to blow both of them up. After he finished assaulting her, he instructed her to take her clothes off and take a bath with him. According to [the victim], her stab wound was bleeding profusely in the bathtub and she wanted to get out of the tub but Defendant Hinton would not allow her to. Defendant Hinton never sought medical attention for [the victim]; Defendant Hinton did not even allow her to leave the house. [The victim] was only able to leave and seek help after Defendant Hinton left the residence. The Court finds these actions are at a level of pain and cruelty not usually associated with second-degree assault.

5

Based on these findings, the district court concluded that "Hinton treated the victim with particular cruelty during the commission of the second-degree assault," and the district court could therefore "consider a sentence greater than the one prescribed by the Minnesota Sentencing Guidelines."

At the sentencing hearing in June 2021, the state sought an executed 84-month sentence, an upward durational departure to the statutory maximum. Relying on its determination that Hinton treated the victim with particular cruelty, the district court granted the upward durational departure and sentenced Hinton to 84 months' imprisonment.

Approximately two years after sentencing, Hinton filed a petition for postconviction relief. Hinton requested resentencing within the presumptive range of 44 to 61 months for his conviction of second-degree assault. Hinton argued that his sentence was unlawful because the aggravating factor of particular cruelty was based on disputed allegations that related to the dismissed charges and to uncharged conduct.[1]

The postconviction court denied Hinton's petition for relief. The postconviction court found that Hinton (1) understood that the state was seeking an aggravated sentence,

[1] Hinton also argued that his guilty plea was not made intelligently. In support of his argument, Hinton submitted an affidavit in which he stated that he did not understand the consequences of his guilty plea. Hinton petitioned the postconviction court to hold an evidentiary hearing regarding whether his plea was made intelligently. The postconviction court determined that the record "conclusively show[ed] that Hinton's plea petition was intelligently offered" and denied Hinton's request for an evidentiary hearing. On appeal, Hinton initially argued that the postconviction court erred by summarily denying his petition on the guilty-plea issue. But Hinton later requested to withdraw that issue from consideration by this court. Thus, we do not reach the issue of whether Hinton was entitled to an evidentiary hearing on the intelligence of his guilty plea.

(2) gave up the right to a trial by jury on the existence of aggravating factors, and (3) agreed to a court trial on aggravated factors based on stipulated evidence that he had reviewed. The postconviction court concluded that the stipulated evidence was "properly before the [district] court" and supported the district court's determination that Hinton treated the victim with particular cruelty. Specifically, the postconviction court observed:

> Hinton was threatening to kill the victim while he was stabbing her, that while he stabbed her she was bleeding profusely, and Hinton kept her confined to the residence not allowing her to seek medical attention. Even though she was bleeding profusely from a stab wound from the assault, Hinton insisted she take a bath with him.

Based on those facts, the postconviction court concluded that the district court did not abuse its discretion in determining that Hinton treated the victim with particular cruelty. Accordingly, the postconviction court denied Hinton's petition for relief.

This appeal follows.

## DECISION

Hinton argues the postconviction court abused its discretion when it concluded that the district court properly sentenced him to an upward durational departure of 84 months because the district court improperly relied on disputed conduct relating to dismissed charges and uncharged offenses when it found Hinton acted with particular cruelty.[2] For that reason, he contends that we should reverse the postconviction court's order and remand

---

[2] The state did not file a responsive brief. "If the respondent fails or neglects to serve and file its brief, the case shall be determined on the merits." Minn. R. Civ. App. P. 142.03; *see also State v. Redford*, 986 N.W.2d 257, 261 (Minn. App. 2023) (applying rule 142.03 in a criminal case). Therefore, we shall decide this appeal on the merits.

for resentencing within the guidelines' presumptive sentencing range for second-degree assault.

"We review a denial of a petition for postconviction relief for an abuse of discretion." *Gulbertson v. State*, 843 N.W.2d 240, 244 (Minn. 2014). "A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012) (quotation omitted).

*Minnesota Sentencing Guidelines*

Before considering whether the postconviction court abused its discretion in its consideration of Hinton's argument regarding his sentence, we provide a brief discussion of the Minnesota Sentencing Guidelines. The Minnesota Sentencing Guidelines exist "to assure uniformity, proportionality, rationality, and predictability in sentencing." *State v. Jones*, 745 N.W.2d 845, 848 (Minn. 2008) (quotation omitted). The guidelines establish presumptive sentences for felony offenders for whom imprisonment is proper. Minn. Stat. § 244.09, subd. 5 (2022). In certain circumstances, a district court may durationally depart from the presumptive sentence. Minn. Sent'g Guidelines 2.D (2018). An upward durational departure must be supported by "substantial and compelling circumstances." *Jones*, 745 N.W.2d at 848. To be "substantial and compelling," the defendant's conduct in the offense of conviction must be significantly more serious than that typically involved in the commission of the same offense. *Id.*

The sentencing guidelines provide a nonexclusive list of aggravating factors that may support an upward departure. Minn. Sent'g Guidelines 2.D.3(b) (2018). One

aggravating factor that may support an upward departure exists when "[t]he victim was treated with particular cruelty for which the individual offender should be held responsible." Minn. Sent'g Guidelines 2.D.3(b)(2) (2018). "The presence of a single aggravating factor is sufficient to uphold an upward departure." *State v. Weaver*, 796 N.W.2d 561, 571 (Minn. App. 2011), *rev. denied* (Minn. July 19, 2011).

In this case, the district court determined that "Hinton's actions were significantly more serious than those typically involved in the commission of second-degree assault" and warranted an upward durational departure based on the particular-cruelty factor. The district court found that Hinton acted with particular cruelty based on the stipulated evidence that Hinton agreed would be admissible at the aggravated-factor court trial. The postconviction court concluded that the district court did not abuse its discretion when it found the record supported this aggravated factor.

*Hinton's Arguments*

Hinton argues that the postconviction court abused its discretion because the district court improperly sentenced Hinton to an upward durational departure based on "dismissed and uncharged conduct disputed by [Hinton]." "An upward departure will be reversed if the sentencing court's articulated reasons for the departure are improper or inadequate and the evidence in the record is insufficient to justify the departure." *Tucker v. State*, 799 N.W.2d 583, 586 (Minn. 2011) (quotations omitted).

Hinton's sentencing argument appears to raise two distinct issues: (1) the district court's reliance on conduct that he "did not readily admit to" and (2) the district court's

9

reliance on conduct that related to uncharged offenses or dismissed charges. We address Hinton's arguments in turn and conclude that neither argument warrants reversal.

*Disputed Conduct*

First, we address Hinton's argument regarding whether the district court relied on "disputed" conduct. In support of this argument, Hinton contends that he "did not readily admit to all the conduct the sentencing court examined."

In *Blakely v. Washington*, the United States Supreme Court held that a sentence based on facts "neither admitted by [a defendant] nor found by a jury" violates the Sixth Amendment. 542 U.S. 296, 303-05 (2004). But "[w]hen a defendant pleads guilty, the [s]tate is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." *Id.* at 310. The Minnesota Supreme Court has cited *Blakely* for these same principles. *See State v. Shattuck*, 704 N.W.2d 131, 141-42 (Minn. 2005).

Here, the record definitively shows that Hinton expressly waived his right to a jury trial on the existence of aggravated factors and consented to judicial factfinding on the issue. First, in the plea petition, Hinton agreed to "waive [a] jury trial on aggravating factors and request trial to the court for sentencing." And, at the aggravated-factor trial, Hinton orally affirmed his waiver, confirming he knew that "the facts" to be considered by the district court in determining the existence of aggravating factors were "going to be submitted by a stipulation." Hinton further acknowledged that he was giving up his "rights to confront and cross-examine any witness that the state would present." And Hinton stated that he reviewed the stipulated evidence and admitted to being "familiar" with it. In short,

10

Hinton waived his right to have a jury decide the existence of aggravating factors, and instead consented to judicial factfinding based on evidence he reviewed and agreed would be admissible. Accordingly, the district court did not abuse its discretion by finding facts based on the stipulated evidence, and the facts found by the district court are not "disputed." *See id.* at 142.

Hinton's reliance on cases that predate *Blakely* and *Shattuck* to argue otherwise is unavailing. For instance, Hinton cites *State v. Womack* for the proposition that a district court may only rely on a defendant's conduct to durationally depart when the defendant "admits that the underlying conduct occurred." 319 N.W.2d 17, 19 (Minn. 1982). But in *Womack*, the supreme court observed that "[g]iven the way in which the case was presented to the [district] court, the [district] court was not entitled to act as factfinder." *Id.* at 20. Because *Womack* predated the United States Supreme Court's decision in *Blakely*, the *Womack* opinion contains no reference to the defendant waiving his right to a jury trial on aggravating factors. *See id.* at 18-20. Here, on the other hand, Hinton consented to the district court acting as the fact-finder regarding aggravating factors, consistent with *Blakely* and *Shattuck*. *Blakely*, 542 U.S. at 310; *Shattuck*, 704 N.W.2d at 142. We therefore reject Hinton's reliance on *Womack* and other cases predating *Blakely* and *Shattuck*.

*Conduct Relating to Uncharged Offenses or Dismissed Charges*

Next, we turn to Hinton's argument regarding the district court's reliance on "dismissed and uncharged conduct." Hinton argues that the sentencing court abused its discretion when it found that Hinton acted with particular cruelty because the district court relied on (1) uncharged offenses for threats of violence; and (2) allegations surrounding the

11

dismissed kidnapping charges, including conduct that occurred after the stabbing that was the basis for Hinton's second-degree-assault guilty plea. As a result, he contends that he was deprived of the benefit of his plea bargain. We are not persuaded.

Hinton is correct that a sentencing departure "cannot be based on uncharged or dismissed offenses." *Jones*, 745 N.W.2d at 849. But "it is generally proper for the court to consider the conduct underlying the offense of which the defendant is convicted" as a basis for a durational departure. *Shattuck*, 704 N.W.2d at 140.

Hinton contends that the district court improperly relied on certain conduct including Hinton's use of restraints on the victim, Hinton's refusal to allow the victim to leave his house, and Hinton's threats to cut the victim's eye out, kill her, and blow up the house by opening a gas valve. Hinton asserts that these alleged acts relate only to the dismissed kidnapping counts or to uncharged offenses for making violent threats, and, therefore, the district court improperly relied on the acts when sentencing Hinton for the stabbing.

Based on the stipulated evidence, the district court found otherwise. The district court specifically found that Hinton's use of restraints on the victim (including binding and gagging the victim) and his threats to murder the victim occurred during the same incident as Hinton stabbing the victim. That the victim was bound and gagged *while* Hinton stabbed her supports a determination of particular cruelty. Likewise, that Hinton threatened to kill the victim during the same incident in which he stabbed her supports a determination of particular cruelty. Hinton's threats to murder the victim with the knife and his use of restraints were therefore part of "the conduct underlying" the stabbing. *See id.*

12

Accordingly, the district court properly relied on those facts to determine that Hinton acted with particular cruelty when he stabbed the victim.

Hinton's argument that the district court should not have considered conduct that occurred after the stabbing in determining whether Hinton treated the victim with particular cruelty is also unavailing. The mere fact that conduct occurred after an offense does not mean that the conduct cannot provide support for a departure. In *State v. Traylor*, this court affirmed a durational departure based on the particular-cruelty factor. 641 N.W.2d 335, 342 (Minn. App. 2002), *aff'd in part, rev'd in part on other grounds*, 656 N.W.2d 885 (Minn. 2003). In affirming the durational departure, this court noted the following facts supported the departure:

> *[A]fter the stabbing*, Traylor refused to let [the victim] out of her home for several hours so that she could receive medical attention. Furthermore, there was testimony that he disabled the telephones, further hindering her attempts to seek medical attention, and continued to abuse her after the stabbing.

*Id.* (emphasis added). *Traylor* is strikingly similar to this case, in which Hinton refused to let the victim leave his home for several hours and continued to abuse her after the stabbing. The fact that these actions occurred after the stabbing does not mean that the district court could not consider the actions when determining whether Hinton acted with particular cruelty. *See id.*; *see also Tucker*, 799 N.W.2d at 587 (noting that the failure to render aid is "relevant to whether a person convicted of a crime has acted in a particularly cruel manner"). We reject Hinton's argument that the district court abused its discretion by considering conduct that occurred after the stabbing.

It is less clear whether some of the district court's findings, such as Hinton hitting the victim with a wrench and threatening to blow up the house, concerned conduct "underlying" the stabbing. Nonetheless, the district court referenced that conduct when determining that Hinton treated the victim with particular cruelty. As follows, we conclude that the district court made sufficient findings to determine that Hinton acted with particular cruelty, even absent consideration of Hinton's use of the wrench or his threats to blow up the house.

In *Williams v. State*, the supreme court announced the general rule that "[i]f the reasons given [for departure] are improper or inadequate, but there is sufficient evidence in the record to justify departure, the departure will be affirmed." 361 N.W.2d 840, 844 (Minn. 1985). But the supreme court later limited the ability of appellate courts to "independently examine the record" in light of *Blakely*, observing that "the fact finding function must be done by the jury, unless waived by the defendant." *Jones*, 745 N.W.2d at 851 (quotation omitted). The supreme court has also held that "the particular cruelty aggravating factor is a reason explaining why the *facts* of the case provide the district court a substantial and compelling basis for imposition of a [sentencing departure]." *State v. Rourke*, 773 N.W.2d 913, 920-21 (Minn. 2009). As a result, "whether those additional facts provide the district court a reason to depart does not involve a factual determination and, therefore, need not be submitted to a jury." *Id.* at 921. Accordingly, when a defendant waives his right to a jury trial on aggravated factors, as Hinton has here, the supreme court's precedent indicates that we may assess the district court's aggravated-factor factual findings and decide whether the findings are sufficient to support the district

14

court's determination of the particular-cruelty factor. We are satisfied that the district court made sufficient factual findings to justify such a departure in this case.

"Particular cruelty involves the gratuitous infliction of pain and cruelty of a kind not usually associated with the commission of the offense in question." *Tucker*, 799 N.W.2d at 586 (quotations omitted). In *State v. Jones*, the supreme court held that "leaving the victim in a beaten condition and . . . failing to notify the paramedics" supported the conclusion that the crime was particularly cruel. 328 N.W.2d 736, 738 (Minn. 1983). Similarly, in *State v. Sims*, this court affirmed a particular-cruelty determination when the defendant "left [the victim] to die without calling [for] help" and bragged about killing the victim. 553 N.W.2d 58, 61 (Minn. App. 1996), *rev. denied* (Minn. Oct. 29, 1996).

Taken together, these cases demonstrate that the district court made sufficient factual findings here to conclude that Hinton treated the victim with particular cruelty "not usually associated with the commission of" second-degree assault with a dangerous weapon. *See Tucker*, 799 N.W.2d at 586 (quotations omitted). Based on the stipulated evidence, the district court found that Hinton stabbed the victim while she was restrained, and just after Hinton threatened her life. The district court further found that Hinton (1) was indifferent to the victim bleeding profusely from the stab wound, (2) did not allow the victim to leave his house after stabbing her, and (3) did not seek medical attention for the victim. Putting aside the district court's remaining findings, these findings alone were sufficient to justify the district court's determination of particular cruelty. Therefore, we conclude that the district court's determination that Hinton acted with particular cruelty

when he stabbed the victim is supported by its findings, even without consideration of any conduct potentially unrelated to the stabbing.

In sum, the district court did not abuse its discretion by relying on "disputed" facts. Instead, per Hinton's oral and written requests, the district court engaged in judicial factfinding on stipulated evidence. And, the district court's findings related to conduct stemming from and underlying the stabbing support its determination that Hinton treated the victim with particular cruelty. Accordingly, the postconviction court did not abuse its discretion by concluding that the aggravated sentence imposed by the district court was properly based on Hinton's particular cruelty.

**Affirmed.**